UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL CARPENTER, et al.,<br>    Plaintiffs,<br><br>        v.<br><br>JOHN KOSKINEN,<br>    Defendant. | No. 3:13-cv-563 (SRU) |

## RULING AND ORDER ON DEFENDANT KOSKINEN'S MOTION TO DISMISS, OR ALTERNATELY, FOR SUMMARY JUDGMENT

On April 20, 2010, Internal Revenue Service ("IRS") special agents executed a search warrant on property owned and/or occupied by plaintiffs Daniel Carpenter and Grist Mill Capital, LLC ("GMC"). Carpenter and GMC filed this action, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), against defendants Song, Schrader, and 72 Unnamed IRS Special Agents in their individual capacities, and against defendant John Koskinen, IRS Commissioner, in his official capacity. Commissioner Koskinen[1] ("the Government") moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process, ineffective service of process, and failure to state a claim upon which relief can be granted. *See generally* Fed. R. Civ. P. 12(b). Consistent with Rule 4(m), I granted the plaintiffs an extension of the time *nunc pro tunc* to allow the plaintiffs to perfect service, and I then denied the defendants' motion to dismiss on Rule 12(b)(4) and 12(b)(5) grounds as moot. I granted the Government's motion for failure to state a claim upon which

---

1. Since the original complaint in this lawsuit was filed on April 19, 2013, the Commissioner of the Internal Revenue Service has changed several times. The above caption has been amended to name the current commissioner.

1

relief could be granted, Rule 12(b)(6), and dismissed the entire complaint without prejudice to the plaintiffs filing an amended complaint.  Plaintiffs' counsel timely did so.[2]

The Government renews its motion to dismiss the plaintiffs' request for equitable relief, arguing that (1) the district court lacks subject matter jurisdiction under Rule 12(b)(1); (2) the plaintiffs do not claim that they will suffer or are suffering irreparable harm from the deprivation of their seized property, and thus they fail to state a claim for injunctive relief under Rule 12(b)(6); (3) and because evidence seized during the April 20, 2010 search is being utilized in a parallel criminal proceeding before U.S. District Judge Robert N. Chatigny, the plaintiffs have chosen the wrong procedural vehicle for their request.[3]  Koskinen Mot. Dismiss Br. 1 (docs. 38–39).  In the alternative, the Government moves for summary judgment and requests that I deny the plaintiffs' request for injunctive relief as moot.

For the following reasons and those stated upon the record during oral argument on December 4, 2014, the Government's motion is **denied in substantial part**.

I.  Standards of Review

   A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction [Rule 12(b)(1)]

The party who seeks to exercise the jurisdiction of the court bears the burden of establishing the court's jurisdiction.  *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).  To survive a Rule 12(b)(1) motion, a plaintiff must clearly allege facts demonstrating that

---

[2].  The plaintiffs were directed to file their amended complaint no later than June 2, 2014.  On May 29, 2014, the plaintiffs filed their First Amended Complaint (doc. 33).  On May 30, the plaintiffs filed a Second Amended Complaint (doc. 34) to correct typographical errors.  The defendants did not object to the filing of the Second Amended Complaint, and both parties' motion papers refer to the Second Amended Complaint.  Pursuant to Rule 15(a)(2), I accept the Second Amended Complaint as the current operative complaint.

[3].  On December 12, 2013, a grand jury returned an indictment charging Carpenter and his co-defendant with multiple counts of mail and wire fraud, money laundering, and conspiracy to commit both of those crimes.  Indictment (doc. 1), *United States v. Daniel Carpenter*, No. 3:13-cr-226 (RNC) (D. Conn. Dec. 12, 2013).  That case is still pending against Carpenter.

the plaintiff is a proper party to invoke judicial resolution of the dispute.  *Id*.  Although the plaintiff bears the ultimate burden of establishing jurisdiction by a preponderance of the evidence, "until discovery takes place, a plaintiff is required only to make a prima facie showing by pleadings and affidavits that jurisdiction exists."  *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996).  "When considering a party's standing, [the court] 'accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"  *Thompson*, 15 F.3d at 249 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  A court may refer to evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  If a plaintiff has failed to allege facts supportive of standing, it is within the court's discretion to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of standing.  *Thompson*, 15 F.3d at 249.

    B.  <u>Motion to Dismiss for Failure to State a Claim</u> [Rule 12(b)(6)]

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief.  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

**II.    Background**

The following facts are alleged in the Second Amended Complaint and are assumed to be true for the purposes of evaluating Koskinen's motion to dismiss. On April 10, 2010, defendant Schrader and 72 unknown IRS agents executed a search warrant at 100 Grist Mill Road against Daniel Carpenter, Grist Mill Capital LLC, and several other LLCs, which maintained their primary place of business at that address. 2d Am. Compl. ¶¶ 3, 8. During that search, the individual-capacity defendants seized 322 bankers boxes of documents. *Id.* ¶ 9.

Since the April 20, 2010 search, the Government has not brought charges related to the search warrant, nor has it initiated any related civil action against the plaintiffs. *Id.* ¶ 32.

4

Although the Government argues that it has returned 320 bankers boxes of documents, Carpenter alleges that the Government has returned copies of his original files, which he alleges include privileged attorney-client communications related to a criminal prosecution against Carpenter pending in the District of Massachusetts.[4]  *Id.* ¶ 12.  Carpenter notes that he has received four bankers boxes of his original documents seized during the April 20, 2010 search, but he maintains that the Government has not returned 318 of the original 322 seized bankers boxes.

The Government has held 316 of the 322 seized bankers boxes without providing a reasonable justification for doing so.  With respect to two of the original 322 bankers boxes, the Government claims that it is actively using documents from those two boxes for pending prosecutions.  One bankers box of documents ("Box 243") is held by the U.S. Department of Labor ("DOL") in connection with criminal charges pending against Carpenter in *United States v. Daniel Carpenter*, 3:13-cr-226 (RNC) (D. Conn.).  Koskinen MTD Br. 10.  A second box has been held by the IRS in Wisconsin, based on an agreement between the IRS and Carpenter and his Wisconsin counsel.  Koskinen MTD Br. 10; *see also United States v. Daniel Carpenter*, 3:13-cr-226 (RNC), Notice of Related Case 1–2 (doc. 123) (noting that no civil or criminal case has been initiated in the Wisconsin matter).  The plaintiffs do not seek in this case the return of the two bankers boxes of "responsive" documents;[5] instead, they request that Commissioner Koskinen return the remaining 316 bankers boxes of original documents seized during the April 20, 2010 search.  *Id.* ¶¶ 32–33.

---

4.   The Government originally seized 322 bankers boxes of documents, in addition to electronic files, on April 20, 2010.  2d Am. Compl. ¶ 9.  It then returned four of those boxes to Carpenter and retained 318 of the original 322 boxes.  *Id.* ¶ 32.  Of those 318 boxes still in the Government's possession, two boxes are being held in connection with parallel investigations or proceedings—one box is held by the Department of Labor, and the second box is held by the IRS in Wisconsin.  Based on the representations of both parties, the Government still holds the original documents from 316 bankers boxes seized on April 20, 2010, in addition to numerous electronic files seized that same day.

5.   As discussed in section III.C, Carpenter has sought the return and suppression of box 243 in his criminal case before Judge Chatigny.

**III. Discussion**

The Government primarily argues that the plaintiffs' request for the return of property should be denied because Koskinen is immune from suit under the doctrine of sovereign immunity. It principally argues that the plaintiffs have chosen the wrong procedural mechanism for requesting the return of property, and accordingly, asserts that this court lacks subject matter jurisdiction over the issue of the plaintiffs' seized property. That argument is an overly formalistic interpretation of Rule 41(g) of the Federal Rules of Criminal Procedure, conflates procedure with jurisdiction, and ignores controlling case law on the issue of property seized in connection with criminal investigations. Accordingly, the Government's motion is denied in substantial part.

A. Sovereign Immunity

Sovereign immunity shields the federal government and its agents from suit, unless the government has waived its immunity. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (internal citations omitted). Such a waiver must be "unequivocally expressed" in statutory text, *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (gathering cases), and the government's consent to be sued "must be construed strictly in favor of the sovereign." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34, 39 (1992). Because sovereign immunity is jurisdictional, a court must first determine whether the federal government has waived its immunity before it may consider other legal questions in the case. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. It limits the exercise of federal power and "guarantees to citizens of the

United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Bell v. Hood*, 327 U.S. 678, 684 (1946); *Bivens*, 403 U.S. at 392. The U.S. Constitution conveys subject matter jurisdiction to the district courts to consider a party's Fourth Amendment request for equitable relief in the form of the return of property. *Adeleke v. United States*, 355 F.3d 144, 150–51 (2d Cir. 2004).  Congress has codified the federal government's waiver of immunity in Rule 41(g) of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3114 & 18 U.S.C. app., which provides:

> A person aggrieved by an unlawful search and seizure of property *or by the deprivation of property* may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

(emphasis added).

Both prior to and after the conclusion of civil or criminal proceedings, district courts maintain equitable jurisdiction to determine if the detention of a person's property is unreasonable. *Adeleke*, 355 F.3d at 151.  A "seizure" of property exists when "there is some meaningful interference with an individual's possessory interests in that property," including the right to exclude others from access to such property. *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  In *Jacobsen*, government officials seized a package containing a powdery substance, tested the powder and ultimately destroyed it.  466 U.S. at 124.  Although the court held that the search did not violate Jacobsen's Fourth Amendment expectation of privacy, it considered whether destruction of the powder interfered with the owners' "possessory interests" and whether such interference was reasonable. *Id.* at 124–25; *see also United States v. Place*, 462 U.S. 696 (1983) (holding that, although a

7

*Terry* search was reasonable, the 90-minute seizure of a passenger's luggage constituted an unreasonable interference with his possessory rights, in violation of the Fourth Amendment).

The Second Circuit has held that "fundamental to the integrity of the criminal justice process" is that "property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner. . . . [T]he district court has both the jurisdiction and duty to return such property." *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992) (citing with approval *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976)). Where no criminal proceeding against the movant is pending or has transpired, a motion for the return of property is "treated as [a] civil equitable proceeding[ ] even if styled as being pursuant to" Federal Rule of Criminal Procedure 41(g). *De Almeida v. United States*, 459 F.3d 377, 379–80 (2d Cir. 2006) (citing *Mora*, 955 F.2d at 158).[6] Although a party may not bring a *Bivens* action for money damages against a federal government official acting in his official capacity, 403 U.S. at 395, that restriction does not apply to requests for certain forms of equitable relief, such as the return of property. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

Although the plaintiffs have not filed a separate motion for the return of property, it is clear from the face of the Second Amended Complaint that they intended to invoke review under Rule 41(g). Failure to submit a separate motion may be a procedural defect, but such a defect does not divest the district court of its jurisdiction over the matter.

B. Return of Non-Responsive Property

1. *The Government has Failed to Articulate a Reasonable Basis for Retaining the Plaintiffs' Non-Responsive Property*

---

6. Even in the context of property retained after a plaintiff had been sentenced in a criminal matter, the U.S. Court of Appeals for the District of Columbia held that once the district court's need for the property had concluded, the district court had "both the jurisdiction and the duty to return the contested property here regardless and independently of the validity or invalidity of the underlying search and seizure." *Wilson*, 540 F.2d at 1104.

During the April 20, 2010 search, the IRS seized 322 bankers boxes of documents, as well as various electronic files, from the plaintiffs' property at 100 Grist Mill Road, Simsbury, Connecticut.  2d Am. Compl. ¶ 32.  Over a year later, while reviewing the seized documentation, the IRS notified the DOL that a box contained information that the DOL later used to initiate criminal proceedings against one of the plaintiffs in this case, Daniel Carpenter.  Koskinen Mot. Dismiss Br. 6–7; *see also United States v. Daniel Carpenter*, 3:13-cr-226 (RNC).  The plaintiffs, including un-indicted party GMC, allege that since the 2010 search, only four of the boxes have been returned.  2d Am. Compl. ¶ 32.  The Government alleges that "with the exception of two boxes," all other bankers boxes "are now in the possession of Daniel Carpenter or his attorneys."  Koskinen Mot. Dismiss Br. 2–3.  The plaintiffs contest that characterization, arguing that the Government has provided copies of their files, as opposed to returning the original files themselves, which include business records and documents, client files, and privileged attorney-client communications related to a separate criminal tax matter against Carpenter in the U.S. District Court for the District of Massachusetts, *United States v. Daniel Carpenter*, 1:04-cr-10029 (GAO).  Pls.' Opp'n Br. 7–8.

Regardless whether a search was lawfully executed, the Second Circuit has held that a party possesses an independent Fourth Amendment right to the return of its seized property.  In *United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), the Second Circuit held that the Government's failure to return non-responsive electronic files seized during the execution of a warrant constituted an unlawful seizure under the Fourth Amendment.  In *Ganias*, the Government executed a lawful search warrant to seize the defendant's computer files, which were later used to sustain an indictment against Ganias.  755 F.3d at 138–40.  Ganias requested that the original, non-responsive files be returned and that the government destroy "mirror

9

image" copies of those non-responsive files. *Id.* The Government refused, arguing that, because it obtained those files through a lawful search, it was not required to return the original files or delete its "mirror-image" copies. *Id.* The Second Circuit found the Government's objection unpersuasive, holding that failure to return non-responsive files effectively converted a particularized warrant into an unlawful general warrant, in violation of the Fourth Amendment. *Id.* at 139 ("If the Government could seize and retain non-responsive electronic records indefinitely, so it could search them whenever it later developed probable cause, every warrant to search for particular [] data would become, in essence, a general warrant."); *see also Doane v. United States*, No. 08-Mag.-17 (HBP), 2009 WL 1619642, at *10 (S.D.N.Y. June 5, 2009) (holding that when the Government seizes documents, the Second Circuit's prior decisions "do not contemplate the indefinite retention of all materials contained within intermingled files."). The Second Circuit went on to hold that, because "the Government has demonstrated no legal basis for retaining the non-responsive documents, its retention and subsequent search of those documents were unconstitutional." *Id.*

Similarly, the Government has provided no rationale for why it should be allowed to retain the 316 bankers boxes of original documents seized on April 20, 2010. It has not brought criminal charges or a civil action against the plaintiffs on the basis of the information found in those bankers boxes, and it has failed to explain why its pending criminal charges against Carpenter preclude either Carpenter or GMC from requesting the return of their property.[7] Moreover, the Government has held the plaintiffs' property for more than five years—over twice the amount of time found to be unreasonable in *Ganias*.

The Government may retain copies of the plaintiffs' non-responsive files only if those

---

7. The Government also contends that in providing the plaintiffs with copies of their original files, it has met its obligation to return the plaintiffs' property. As discussed in section III.B.3, *infra*, that argument is unpersuasive.

10

files are related to the government's investigation of a potential violation of section 7206(2) of Title 26 of the U.S. Code. In its original warrant request, the Government asserted that it had probable cause to believe that Carpenter and a non-party to this civil action, Benistar LLC ("Benistar"),[8] may have violated section 371 of Title 18 of the U.S. Code (conspiracy to defraud the government) and section 7206(2) of Title 26 of the U.S. Code (aiding and abetting the preparation and filing of false tax returns). The statute of limitations for a conspiracy charge expired on April 20, 2015. 18 U.S.C. § 3282(a); *see also* U.S. Dept. of Justice, Criminal Resource Manual § 9-652 (2007) ("Statute of Limitations"). The statute of limitations for aiding and abetting the preparation and filing of a false tax return expires six years after the due date for that false tax return (here, either on April 15, 2015 or April 15, 2016). 26 U.S.C. § 6531(3); Internal Revenue Service, Internal Revenue Manual § 9.1.3.6 (2012) (Statute of Limitation for Criminal Prosecution); U.S. Dept. of Justice, Criminal Tax Manual § 7 (2012). The Government cannot hold the plaintiffs' documents in an attempt to gain leverage over Carpenter in its pending criminal cases against him, nor may it retain the plaintiffs' documents as part of a long-term fishing expedition.

        2. *A Plaintiff Need Not Demonstrate Irreparable Harm to Recover Seized Property*

The Government argues that even if the plaintiffs' Rule 41(g) request is valid, their claim for relief should be dismissed for failure to plead irreparable harm. In support of its argument, the Government relies heavily on case law referring to an outdated version of the Federal Rules of Criminal Procedure. Current case law provides that a plaintiff need not demonstrate irreparable harm in order to demand the return of non-responsive, seized property.

From 1944 to 1989, a party could not move for return of illegally-seized property unless

---

8. Benistar is a co-defendant in Carpenter's District of Massachusetts criminal case.

the court also granted a motion for suppression of that evidence. *Doane*, at \*7; Fed. R. Crim. P. 41(e) (1989). As a result, district courts often deferred ruling on a Rule 41(g)[9] motion "unless the movant could show (1) the search was illegal, (2) that he is without an adequate remedy at law, and (3) that he would suffer some irreparable injury if relief is not granted." *Id.* (citing *Premises Known & Described as 55 W. 47th Street Suites 620 & 650 v. United States*, 712 F. Supp 437, 440–41 (S.D.N.Y. 1989); *see also United States v. Roberts*, 852 F.2d 671, 673 (2d Cir. 1988)). The irreparable harm element was included to ensure that a pre-indictment motion to suppress evidence would not unduly interfere with a grand jury investigation. *Id*. Under the current formulation of the Federal Rules of Criminal Procedure, however, courts have declined to apply the pre-1989 standard to Rule 41(g) motions.

In 1989, the Federal Rules of Criminal Procedure were amended to provide an independent mechanism for the recovery of seized property and to allow the government to request that the return of seized property contain "reasonable conditions . . . to protect access and use of the property in subsequent [criminal] proceedings." Fed. R. Civ. P. 41(e), Advisory Comm. Note (1989); 3A Charles A. Wright, et al., Federal Practice and Procedure § 673 n.10 (3d ed. 2009). Under the reformulated rule—which controls this proceeding and all related criminal proceedings involving Carpenter—the return of property did not necessarily deprive the Government of access to evidence required for grand jury proceedings, obviating the need for a movant to demonstrate irreparable harm. Although the Second Circuit has not ruled directly on the issue, other district courts have declined to impose the pre-1989 irreparable harm requirement to pre-indictment Rule 41(g) motions. *Doane*, at \*8–9; *United States v. E. Side Ophthalmology*,

---

9.  In 2002, Rule 41(e) was restyled as Rule 41(g) for clarity; it was not amended substantively by the 2002 amendments. *Bertin v. United States*, 478 F.3d 489, 492 n.1 (2d Cir. 2007) (citing *Adeleke*, 355 F.3d at 147 n.1); *see also* Committee Note to the 2002 Amendments ("The language of Rule 41 has been amended as part of the general restyling of the [Federal Rules of Criminal Procedure] to make them more easily understood. . . These changes are intended to be stylistic only.").

No. 95-Mag.-2424, 1996 WL 384891, at *2–4 (S.D.N.Y. 1996) ("there is no justification for providing unindicted persons with less procedural protections than accorded those under indictment"). Instead, those district courts have adopted the framework proposed by the Advisory Committee in its notes to the 1989 amendments, which evaluates the reasonableness of the Government's continued interference with the complainant's property rights.

The Government now attempts to shift to the plaintiffs its burden of demonstrating why it is reasonable to retain seized files that are unrelated to a criminal or civil proceeding, as required by Rule 41(g). It argues that the plaintiffs bear the burden of demonstrating that the continuing and limitless deprivation of their property will cause them irreparable harm. Here, as in *Doane*, the Government has not argued that the return or suppression of the 316 bankers boxes of non-responsive documents would interfere with a grand jury investigation or other proceeding. I join other district courts within the Second Circuit and hold that a plaintiff need not plead or demonstrate that he has experienced irreparable harm in order to prevail on a Rule 41(g) motion seeking return of non-responsive documents.

      3.  *Mootness*

The Government argues that because it has returned copies of the seized documents to "Carpenter or his attorneys," it has met its obligation to the plaintiffs and has rendered any controversy moot. That position is inconsistent with case law, which provides that a live, Fourth Amendment controversy exists so long as the plaintiffs are deprived of their property. *Soldal*, 506 U.S. at 61–63; *Ganias*, 755 F.3d at 137. By retaining the plaintiffs' original files, including files that have no relation to any pending criminal or civil proceeding against either plaintiff, the Government continues to interfere with the plaintiffs' "exclusive control over the files for an unreasonable time." *Ganias*, 755 F.3d at 137. The return of copies of the plaintiffs' original

documents does not cure the ongoing deprivation of the plaintiffs' property.  Moreover, the Second Circuit has noted that withholding non-responsive documents or files, including copies of those documents and "mirror-image" files, constitutes an unreasonable violation of the plaintiffs' Fourth Amendment rights.  *See id.* at 138–40.  In light of the particular facts in this case and prior case law in this circuit, the Government has failed to demonstrate that it may lawfully retain original, non-responsive documents for however long it pleases and for whatever reason.  The Government has also failed to cite to any authority in this Circuit that has held that the return of mere copies of a person's property satisfies the Fourth Amendment's prohibition against unreasonable seizures.  Accordingly, its mootness argument fails.

Because the Government has failed to demonstrate that its ongoing retention of the 316 bankers boxes of original documents is reasonable, and because it has deprived the plaintiffs of their property for over five years, it shall return to the plaintiffs the originals of the non-responsive documents held in the 316 bankers boxes, and it shall destroy any and all copies, electronic or otherwise, of all non-responsive documents (including computer "mirror images") seized during the April 20, 2010 search.

### C.  Return of Property Utilized in Parallel Proceedings

When seized property is utilized in separate and ongoing proceedings, the Second Circuit has encouraged district courts to avoid creating parallel proceedings that may result in inconsistent outcomes.  *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006).  In this case, the parties do not contest that two bankers boxes of documents are currently being utilized by the Government in connection with a criminal prosecution and in a pending investigation.

The standard for determining whether to exercise Rule 41(g) jurisdiction over evidence being utilized in other proceedings differs from the standard governing non-responsive evidence.

When evidence is being utilized in separate and ongoing proceedings, Rule 41(g) motions are available as equitable relief "only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *Id.* (citing *United States v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 479 (2d Cir. 1992)). The Second Circuit has noted that in cases where seized property is being used in a separate and ongoing proceeding, Rule 41 jurisdiction "is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *Id.* (internal citations and quotes omitted). For example, in the context of civil and criminal forfeiture, the Second Circuit has held that where "the claimant is afforded the opportunity to test the legality of a seizure in" the original proceedings, the claimant should seek relief in that forum to avoid creating a parallel proceeding. *Id.*

In *De Almeida*, parties who were not defendants in an ongoing criminal case filed a separate Rule 41(g) motion requesting the return of property seized in the course of that criminal proceeding. The Second Circuit held that a district court should decline to exercise its jurisdiction so long as the parties had an opportunity to seek the return of their property through the forfeiture process in the related criminal proceeding. *Id.* at 382–83. Although this case does not involve a forfeiture proceeding, *De Almeida* offers a framework for determining whether to exercise jurisdiction over the two outstanding bankers boxes of "responsive" documents.

In the instant case, the plaintiffs have not requested the return of the single bankers box of information being utilized in *United States v. Daniel Carpenter*, No. 3:13-cr-226 (RNC) (D. Conn.), or the bankers box of documents being held by the IRS in Wisconsin. Pls.' Mot. Dismiss Br. 9. Carpenter also has filed Rule 41 motions and motions to suppress evidence in his District of Connecticut criminal proceeding. *United States v. Daniel Carpenter*, 3:13-cr-226 (RNC), Mot. Suppress (docs. 82 & 83). Those motions pending in his criminal case before Judge

15

Chatigny indicate that the plaintiffs will have the opportunity to seek the return of their property in other for a. Accordingly, I decline to exercise jurisdiction over any request to return documents in the two boxes actually being utilized by the Government.

**IV.  Conclusion**

Based on all the information in the record to date, oral argument, and the reasons set forth in this order, the Government's motion to dismiss the plaintiffs' official-capacity claims for the return of property (doc. 38) is **granted in part and denied in substantial part**. The plaintiffs have stated an adequate claim for equitable relief regarding return of the 316 bankers boxes of non-responsive documents. Accordingly, I **deny** the Government's motion with respect to its argument that the court lacks subject matter jurisdiction to adjudicate the plaintiffs' request. At this time, I decline to exercise jurisdiction with respect to the two bankers boxes of "responsive" documents, without prejudice to the plaintiffs requesting the return of their property in *United States v. Daniel Carpenter*, 3:13-cr-226 (RNC) (D. Conn.), or in other related civil and criminal proceedings. I **deny** the Government's motion with respect to the remaining 316 bankers boxes of non-responsive, original documents. The Government shall return to the plaintiffs the originals of the non-responsive documents held in the 316 bankers boxes, and it shall destroy any and all copies, electronic or otherwise, of all non-responsive documents (including computer "mirror images") seized during the April 20, 2010 search.

It is so ordered.

Dated at Bridgeport, Connecticut, this 4th day of June 2015.

                                                   /s/ STEFAN R. UNDERHILL
                                                  Stefan R. Underhill
                                                  United States District Judge