# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL E. CARPENTER, and | : |
| GRIST MILL CAPITAL, LLC, | : |
| | :    Case No. 3:13-cv-563 (SRU) |
|     Plaintiffs, | : |
| | :    Judge Stefan R. Underhill |
|   v. | : |
| | :    July 2, 2015 |
| COMMISSIONER, INTERNAL REVENUE | : |
| SERVICE, JOHN KOSKINEN, | : |
| SHAUN SCHRADER, VICTOR SONG, | : |
| and JANE AND JOHN DOES 1 TO 72, | : |
| | : |
|     Defendants. | : |
| | : |

## THE UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF, AND TO ALTER OR AMEND, THE COURT'S JUNE 4, 2015 RULING AND ORDER, AND FOR A *WALLACE* STAY OF RULE 41(G) CLAIM

The United States of America, improperly named and sued as Commissioner John

Koskinen, (the "United States" or "Government")[1] respectfully submits the following

memorandum in support of its motion for reconsideration of, and to alter or amend, the

Court's June 4, 2015 Ruling and Order that commands the United States to "destroy any

and all copies, electronic or otherwise, of all non-responsive documents (including

---

[1] "It is well settled that suits filed against federal government employees acting in their official capacities must be construed as suits against the United States." *Channer v. Murray*, 247 F. Supp. 2d 182, 186 (D. Conn. 2003) (Underhill, J.) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). The Second Amended Complaint states that Koskinen is "sued in his official capacity only." Doc. No. 34 at 1. But Plaintiffs have no standing to sue Koskinen for the return of property, and Koskinen does not control the property identified in the complaint. Consequently, all claims against defendant Koskinen should have been brought against the United States, and the Court lacks jurisdiction over this action as currently pled.

computer 'mirror images') seized during the April 20, 2010 search," Doc. No. 55 at 14, and for a *Wallace* stay of the Rule 41(g) claim. By this motion, brought pursuant to District of Connecticut Local Rule 7(c) and Fed. R. Civ. P. 59(e), the Government urges the Court to vacate its June 4, 2015 Ruling and Order for a number of reasons.

First, the representations of Plaintiffs Daniel E. Carpenter ("Carpenter") and Grist Mill Capital LLC ("GMC") in this case, and the remedy imposed by the Court, are inconsistent with a stipulated settlement of previous Rule 41(g) proceedings regarding this same property in 2010 before another judge of this court, Judge Alfred V. Covello, by which the original documents were already returned to the parties asserting ownership.

Second, the documents at issue are the subject of a suppression motion in a criminal case against Carpenter pending before Judge Robert N. Chatigny in this district. Judge Chatigny has prior exclusive jurisdiction over the property, and this Court's ruling could impugn any contrary findings by Judge Chatigny or any future conviction.

Third, the same documents at issue were originally obtained pursuant to a 2010 search warrant on behalf of a grand jury that is still empaneled in the Eastern District of Wisconsin. The ongoing grand jury investigation is imperiled by the Court's order to destroy copies of the documents and electronic evidence that was seized in 2010.

Fourth, the Court erred in failing to require Plaintiffs to establish entitlement to relief, since criminal proceedings are still pending in Connecticut and Wisconsin.

Fifth, the destruction-of-property remedy goes well beyond what is sought by Plaintiffs and relies upon an unwarranted expansion of *United States v. Ganias*, 755 F.3d

125 (2d Cir. 2014), a case that is of limited precedential value since the Second Circuit has granted *en banc* rehearing.

Sixth, the Court made factual findings and granted Rule 41(g) relief without any evidentiary basis, which is contrary to binding Second Circuit authority.

In sum, because the Court's ruling is inconsistent with a prior settlement agreement, would imperil ongoing criminal proceedings, grants a remedy of return and destruction well beyond that sought by Plaintiffs or contemplated by Rule 41(g), and provides injunctive relief through *sua sponte* factual determinations based on Plaintiffs' pleadings alone, the Government respectfully requests that the Court reconsider, alter or amend, and vacate the June 4, 2015 Ruling and Order.

## BACKGROUND

Plaintiffs' motion for return of property is one of many attempts by Carpenter and the numerous entities he owns or controls, including GMC, to derail a criminal prosecution currently pending in the District of Connecticut and to avoid criminal charges in connection with a grand jury investigation in the Eastern District of Wisconsin.[2] A recitation of the history of this litigation is necessary to explain why reconsideration and Rule 59(e) relief is warranted.

---

[2] Carpenter is currently serving a sentence of imprisonment at USP Canaan for mail and wire fraud. That conviction was recently affirmed by the First Circuit. *See United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015). According to the Bureau of Prisons, Carpenter's expected release date is January 26, 2017.

**2010 IRS Search Warrant and Rule 41(g) Cases**

This dispute arises from evidence obtained pursuant to an April, 2010 search warrant executed in the District of Connecticut by investigators with the Internal Revenue Service ("IRS"). The criminal investigation, supervised by the United States Attorney's Office for the Eastern District of Wisconsin, focused on the promotion and administration of abusive welfare benefit plans by entities and individuals located at 100 Grist Mill Road in Simsbury, Connecticut. *See United States v. Carpenter*, No. 3:13-CR-226-RNC, Doc. No. 83-2 at 2-3. In the affidavit accompanying the search warrant, Carpenter was identified as a corporate representative of the entities. *See id.* at 12 & 49. The warrant was executed on April 20, 2010, and IRS agents seized 322 boxes of documents along with images of 11 computers or servers, one thumb drive, and one external hard drive. *See* Giampietro Decl. at ¶ 2.

Following the IRS search in 2010, privilege and Rule 41(g) litigation ensued, both in Connecticut and in Wisconsin. Two motions for return of property under Rule 41(g) were filed in the District of Connecticut and consolidated before Judge Covello. In one of those cases, Benistar Admin Services Inc. ("BASI"), an umbrella company for the entities located at 100 Grist Mill Road, identified itself as the "owner and custodian" of all property seized during the execution of the search warrant, including all of the computers that were imaged. *See* Doc. No. 48-1 at 1-2; *Benistar Admin. Servs., Inc. v. IRS,* No. 3:10-mc-60-AVC, Doc. No. 1 at 4. BASI requested the immediate return of "all property seized by the IRS on April 20, 2010." *See Benistar Admin. Servs., Inc. v. IRS,* No. 3:10-mc-60-AVC, Doc. No. 1 at 6. Seven days later, another Rule 41(g)

miscellaneous case was brought by GMC – a plaintiff in this case – and 15 other parties, including numerous entities controlled by Carpenter. *Pettibone Tavern, LLC v. IRS*, No. 3:10-mc-64-AVC. In that lawsuit, the petitioners sought "the immediate return of all property illegally seized by the Internal Revenue Service ('IRS') during its illegal April 20, 2010 'commando-like' raid and illegal search of the Petitioners' offices located at 100 Grist Mill Road in Simsbury, Connecticut[.]" *Id.,* Doc. No. 1 at 1-2. Carpenter was not a party to either Rule 41(g) case.

The parties settled the Rule 41(g) litigation when the Government agreed to return the hard copy documents after a reasonable opportunity to copy them, and the movants agreed to stay their Rule 41(g) motions until they received the property. *Id.* at 2. Boxes that contained what the IRS filter team determined to be potentially relevant documents would be maintained at Halloran and Sage LLP, BASI's Connecticut counsel, while boxes with documents that the IRS filter team determined were not potentially relevant would be returned directly to 100 Grist Mill Road. Giampietro Decl. at ¶ 8. Judge Covello accepted the parties' stipulated resolution. *Id.*; *see also Benistar Admin. Servs., Inc. v. IRS,* No. 3:10-mc-60-AVC, Doc. No. 22; No. 3:10-cv-64-AVC, Doc. No. 44. Judge Covello ordered that,

> In light of the parties' stipulation regarding the return of documents at issue in this case, the pending motions 1, 8, 32, 33 and 35, are denied without prejudice. Should the government fail to return the documents at issue in accordance with the terms of the parties' stipulation, the plaintiffs may refile their rule 41(g) motion for return of property, adopting the arguments made in the original motion. If the plaintiff must refile, the court will give priority to the new motion as if it were filed on the date of the previously filed motion.

*Pettibone Tavern*, No. 3:10-mc-0064-AVC, Doc. No. 44

Pursuant to the settlement agreement, the United States returned 320 of the 322 boxes to BASI or Halloran and Sage LLP, on or before June 16, 2011, and retained two original boxes under a subsequent agreement with Carpenter's Wisconsin counsel. *See* Doc. No. 40-1 at 2.

In addition to the Rule 41(g) cases, several individuals and entities – including Carpenter – issued broad claims of privilege over the seized material in Wisconsin. Giampietro Decl. at ¶ 4. In fact, Carpenter and other individuals and entities asserted privilege over 76,918 documents included in the electronically-stored information. *Id.* Extensive sealed litigation has taken place in Wisconsin to resolve the blanket privilege claims. *Id.* at ¶ 5. In connection with that litigation, United States District Judge Lynn Adelman of the Eastern District of Wisconsin issued three orders regarding a filter team to review the seized material for privilege. *Id.* Because of the delay caused by these privilege claims and the volume of evidence, the search of the seized material (both hard-copy and electronic) remains incomplete. *Id.* at ¶ 11.

**2011 DOL Search Warrant and Connecticut Indictment**

Before the Wisconsin prosecution team examined any documents or computer files pursuant to Judge Adelman's filter orders, the United States Department of Labor ("DOL") sought search warrants for an unrelated investigation supervised by the United States Attorney's Office for the District of Connecticut. *See* Giampietro Decl. at ¶ 10;

*United States v. Carpenter*, No. 3:13-cr-226-RNC, Doc. No. 81-2.[3]  The DOL warrants

did not seek records related to all 419 welfare benefit plans, but only as to specific

entities and individuals.  Search warrants were obtained, and they were executed in

Connecticut on May 26, 2011.  *Id.*  As of that date, there was no resolution as to the

privilege claims before Judge Adelman, and thus the Wisconsin investigators had yet to

begin searching the material seized in April 2010.  *See* Giampietro Decl. at ¶ 10.

    In addition to the warrants executed in Connecticut, DOL agents also executed a

search warrant issued in the Eastern District of Wisconsin authorizing the search of

certain boxes maintained at an IRS facility in Milwaukee, Wisconsin that had been seized

during the April 20, 2010 search, but that had not been returned to Halloran and Sage or

BASI.  Doc. No. 40-2 at 2.  One of the boxes was seized and transferred to Connecticut.

*Id.*  The United States provided Carpenter's counsel electronic copies of the contents of

that box.  *Id*.  Also contemporaneous to the May 26, 2011 warrant, the grand jury in

Connecticut issued a subpoena to Halloran and Sage for certain material that had been

seized in the April 2010 warrant execution, but had been returned pursuant to the Rule

41(g) stipulation.  Several of those boxes were thus turned over to the DOL in

Connecticut.  Warrants were also executed on May 26, 2011 that permitted the DOL to

---

[3] The DOL investigation focused on a separate scheme utilizing the Charter Oak Trust, Charter Oak Trust 2009, and the Charter Oak Trust Welfare Benefit Plan, along with certain other entities and individuals located at 100 Grist Mill Road and another location in Stamford, Connecticut.  *Id.*

copy the images of the IRS-seized media from 2010. *United States v. Carpenter*, No. 3:13-cr-226-RNC, Doc. No. 81 at 3.

On December 12, 2013, Carpenter was charged in the United States District Court for the District of Connecticut in a 33-count criminal indictment with conspiracy to commit mail and wire fraud, aiding and abetting, and substantive counts of mail and wire fraud. *See United States v. Carpenter*, No. 3:13-cr-226-RNC, Doc. No. 1. The case was assigned to Judge Chatigny. On May 14, 2014, the grand jury returned a 57-count superseding indictment against Carpenter that included additional counts of conspiracy to commit money laundering, illegal monetary transactions, and substantive counts of money laundering. *See id.*, Doc. No. 53. Within that criminal case, Carpenter has moved for suppression of all evidence seized during the IRS and DOL searches in 2010 and 2011, including all of the property at issue in this proceeding. *See id.*, Doc. Nos. 80-83. That is, he raises the same allegations of wrongdoing, and seeks as a remedy the suppression of the very same evidence at issue in this Rule 41(g) proceeding. *Compare id.,* Doc. Nos. 82 & 83 ("Motion to Suppress Evidence/Documents Seized From the Raid of April 20, 2010"), *with* Doc. No. 33 (Amended Complaint). His motion to suppress was argued on December 4, 2014, and the matter remains under advisement.

**The Instant Lawsuit**

On April 19, 2013, Plaintiffs filed this lawsuit, seeking money damages against the agents involved in the 2010 search and "injunctive relief in the form of an order requiring that the material seized be returned to its rightful owner(s)." *See* Doc. No. 1 at 7. After the Court granted the United States' motion to dismiss without prejudice,

Plaintiffs filed two amended complaints. *See* Doc. Nos. 33-34. The United States sought

dismissal of Plaintiffs' second amended complaint because (1) sovereign immunity is not

waived; (2) Plaintiffs failed to allege irreparable harm; and (3) this civil action constitutes

an inappropriate attempt by Plaintiffs to obtain in equity a binding determination that

evidence obtained in connection with a pending criminal case was unlawfully seized. *See*

Doc. No. 38 & 39. Alternatively, the United States moved for summary judgment on the

grounds of mootness, because the original documents seized pursuant to the search

warrant are already in the possession of Carpenter, his corporations, or his attorneys. *Id.*

The United States provided two declarations to establish that the property was

already returned. *See* Doc. Nos. 40-1 & 40-2. Plaintiffs submitted no evidence to rebut

the United States' summary judgment evidence, and no additional evidence was elicited

at the Court's December 4, 2014 motion hearing or otherwise submitted. At the hearing,

the Court stated that it was premature to consider the merits of this case and suggested

that the Connecticut criminal case would be decided "long before" the Court ruled upon

Plaintiffs' motion for return of property. *See* Mot. Hrg. Tr. at 7.

By its June 4, 2015 Ruling and Order, the Court denied the United States' motion

to dismiss and for summary judgment. *See* Doc. No. 55. The Court held that Plaintiff's

allegations of fact, taken as true, establish subject matter jurisdiction and state a claim for

return of property under Fed. R. Crim. P. 41(g). *Id.* at 6-8. The United States maintains

that the motion should have been granted, but will not re-urge the merits of its motion.

However, the Court went beyond denying the United States' motion. Although

Plaintiffs did not submit evidence to support their motion, and despite the Court's

indications that it was not addressing Plaintiffs' underlying motion,[4] the Court made findings of fact based solely on the allegations contained in Plaintiffs' Second Amended Complaint and their brief in opposition to the motion to dismiss. Accepting as true the allegations contained in the complaint, the Court determined that (1) the Government has retained possession of Plaintiffs' "original files"; (2) the documents maintained by the Government are "non-responsive"; (3) the files seized are "unrelated to a criminal or civil proceeding"; and (4) only two bankers' boxes of documents are being utilized by the Government in connection with a criminal prosecution and in a pending investigation. Doc. No. 55 at 8-14. The United States submits that these findings lack any evidentiary support, are factually incorrect, were not ripe for determination on a motion to dismiss, and opine upon disputed issues of fact that cannot be determined by the Court in this manner. Indeed, Plaintiffs themselves argued in opposition to the United States' motion that "[t]he fate of the plaintiffs' property is disputed and unresolved and thereby leaves material facts to be determined by the fact finder." Doc. No. 45 at 10.

Based upon its *sua sponte* factual determinations, the Court then made conclusions of law and granted Plaintiffs relief beyond the remedy they sought – mandating not only the return of the documents (as Plaintiffs requested), but also ordering the destruction of any copies maintained by the Government. Doc. No. 55 at 13-16. The Court determined that the Government was obligated to demonstrate that retaining the seized items is

---

[4] At the motion hearing, the Court stated, "I'm not reaching the merits today of the 41(g) issue because what I have before me is the motion to dismiss. So the only question is whether that claim should proceed in this Court or whether this Court has jurisdiction, et cetera." Mot. Hrg. Tr. at 7-8.

reasonable, *id.* at 11, and held that the Government's motion to dismiss did not satisfy this burden. *Id.* at 13-14. The Court also appears to have concluded, as a matter of law, that maintaining copies or original documents seized under a valid search warrant over a five-year period is unreasonable, based upon its belief that the statute of limitations has run for any criminal prosecution, s*ee id.* at 11 – a legal determination reached without notice to the parties or briefing on the question. The Court found that the United States failed to "demonstrate that it may lawfully retain original, non-responsive documents for however long it pleases and for whatever reason." *Id.* at 14. Accordingly, it ordered the Government to "return to the plaintiffs the originals of the non-responsive documents held in the 316 bankers boxes, and it shall destroy any and all copies, electronic or otherwise, of all non-responsive documents (including computer 'mirror images') seized during the April 20, 2010 search." *Id.* The United States believes that this extraordinary relief of returning the originals and destroying all copies was imprudently granted and respectfully requests the Court's reconsideration, and that the order be altered or amended to deny the relief requested or stay this action until the completion of the criminal proceedings in Connecticut and Wisconsin.

## ARGUMENT

I. **This Court's Order is Inconsistent with the Settlement of Prior Rule 41(g) Motions and Risks Irreparable Consequences for Ongoing Criminal Proceedings in Connecticut and Wisconsin.**

The Government respectfully requests that the Court reconsider the June 4, 2015 Ruling and Order because the factual findings and the relief granted are inconsistent with a stipulated settlement in two prior Rule 41(g) motions brought by Plaintiff GMC and

11

other entities associated with Carpenter, because the relief greatly impacts a criminal case against Carpenter that is currently pending before Judge Chatigny, and since it interferes with an ongoing grand jury investigation in the Eastern District of Wisconsin.

A. Prior Rule 41(g) Proceedings

The United States submits that this proceeding is duplicative of the two prior Rule 41(g) motions submitted to this Court, that representations made in those lawsuits raise factual questions regarding Plaintiffs' standing to bring the instant case, and that the Court's order requiring the return and destruction of property is inconsistent with the settlement of that litigation over four years ago.

As explained above, the United States returned 320 of the 322 boxes seized pursuant to the April 2010 search warrant to the parties asserting ownership of the property or their counsel, on or before June 16, 2011. *See* Doc. No. 40-1 at 2; Giampietro Decl. at ¶ 9. It retained two original boxes under a subsequent agreement with Carpenter's Wisconsin counsel, but provided to counsel images of all documents retained. *See* Doc. No. 40-1 at 2. To date, the movants in the prior Rule 41(g) matters, including Plaintiff GMC, have not notified the United States Attorney's Office for the Eastern District Wisconsin that the Government has failed to comply with the terms of the stipulated resolution, nor have they returned to Judge Covello and complained that the Government failed to abide by the parties' agreement. Giampietro Decl. at ¶ 9. The Government submits that there remains no live case or controversy, because the property sought here has already been returned and the return-of-property claim is barred by

principles of *res judicata*. If any controversy does exist about the implementation of that settlement agreement, it should be decided by Judge Covello in the first instance.

Moreover, the Government asks the Court to take judicial notice of the representations made in the prior proceedings – that BASI, and not Carpenter or GMC – was the owner and custodian of all property seized during the April 2010 warrant execution. *See* Giampietro Decl. at ¶ 7; *Benistar Admin Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 4. Plaintiffs may not seek the return of documents owned by BASI. *See, e.g., United States v. Salvucci*, 448 U.S. 83, 94-95 (1980). To the extent Plaintiffs seek return of property simply because it belongs to "entities with which they were associated," they cannot do so. That is, Plaintiffs do not have standing to seek the return of property owned by third party entities that are merely "associated" with them, especially since those unspecified entities may have previously entered into a settlement agreement regarding the property's use. To the extent Plaintiffs now assert that they own the property, they bear the burden of proof on jurisdiction and have not established their ownership or standing to seek return of the property. *See, e.g., In re Wiltron Assocs., Ltd.*, 49 F.R.D. 170, 173 (S.D.N.Y. 1970) ("In the absence of Zohn's ability to establish ownership, and in view of the conflict as to the ownership of the certificates as between others, the certificates should not in any event be returned to Zohn [under Rule 41], at least until ownership is established.").

Plaintiffs thus ask the Court to compel a turnover of evidence previously returned to other parties that asserted ownership in prior lawsuits against the United States. This is asking the Government to do what is not possible. The Ruling and Order by this Court

requiring the United States to turn over evidence already turned over to BASI, then, requires relief that is inconsistent with the agreement disposing of that prior proceeding and conveys standing on Plaintiffs that they have not established. Accordingly, the United States seeks reconsideration and vacatur of the Court's order requiring it to return and destroy property.

B. District of Connecticut Criminal Proceeding

The United States also requests reconsideration because this lawsuit represents forum-shopping by Plaintiffs, and compliance with the order to destroy electronically-stored evidence will interfere with and irreparably harm the Connecticut prosecution.

Because there is a pending criminal case against Carpenter that involves some of the same property at issue in this civil proceeding, Judge Chatigny should have sole jurisdiction over the property. That is, the court with the criminal case is intended to have exclusive jurisdiction, until the case closes, over the seized assets, including the determination of whether the assets were properly seized. *See, e.g., De Almeida v. United States*, 459 F.3d 377, 382-83 (2d Cir. 2006) (Rule 41(g) relief "is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction."); *see also United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (a Rule 41(g) motion will be denied if the government's need for the property as evidence continues). Even if the doctrine of prior exclusive jurisdiction did not apply, this Court should abstain. Separating jurisdiction over the property into a criminal suppression motion and a simultaneous equitable proceeding for return of property risks inconsistent decisions or one federal court entering an order that would essentially enjoin the other court. And, as

a matter of fairness, Carpenter should not be permitted to litigate what is essentially a single suppression motion in two separate proceedings – one civil, one criminal.

In its factual findings, the Court mistakenly concludes that the only material from the April 2010 search that is relevant to the District of Connecticut criminal case is one box of material seized pursuant to a warrant secured by the DOL. As described above, that is not correct. The DOL obtained material from the April 2010 search via three methods: (1) search warrants in Connecticut to copy the images of the 11 computers or servers, one thumb drive, and one external hard drive obtained in April 2010 by the IRS; (2) a search warrant in Wisconsin for a small amount of material still being held by the IRS; and (3) a grand jury subpoena to Halloran and Sage for certain material contained in the boxes that had been returned to Halloran pursuant to the Rule 41(g) settlement. Thus, the DOL in Connecticut is in possession of a number of boxes and images of electronically-stored information derived from the 2010 IRS search, all of which are relevant and the subject of a pending suppression motion before Judge Chatigny. Although it appears this Court intended to carve out an exception for material being used in the pending criminal case, it did so incompletely. Taken literally, the Court's order would call for the prosecution to destroy material that is intended to be used as evidence at trial and is currently the subject of the suppression motion before Judge Chatigny.

The Ruling and Order therefore directly impacts the pending criminal proceeding against Carpenter, making factual and legal conclusions on issues currently under advisement by Judge Chatigny on Carpenter's motion to suppress. The Government respectfully requests that the Court vacate its order requiring the return and destruction of

15

property and dismiss or stay this lawsuit because the relief requested here (and granted by the Court's Ruling and Order) has already been sought in the criminal proceeding.

C. Federal Grand Jury Investigation in Wisconsin

The United States also seeks reconsideration because the Wisconsin grand jury investigation is ongoing and the review of the seized electronic and hard copy evidence is incomplete. *See* Giampietro Decl. at ¶¶ 11-12. Compliance with the Court's order to destroy electronically stored evidence will interfere with and irreparably harm the ongoing Wisconsin grand jury's investigation of Carpenter and would appropriate the role of the federal district court supervising that investigation. *Id.* at ¶¶ 5 & 14.

Because the evidentiary record is incomplete, this Court misunderstands the reason for the delay in the Wisconsin investigation and appears to believe that the documents at issue here are unnecessary for that investigation. As described above, however, the grand jury's investigation is ongoing, and the delay has been caused by blanket assertions of privilege by Carpenter and the volume of evidence. *Id.* at ¶ 11-12. The search of the seized material, both hard-copy and electronic, remains incomplete, and the grand jury's investigation will be unduly burdened by this Court's Ruling and Order. *Id.* at ¶¶ 11-14.

The Ruling and Order also provides an unwarranted advisory opinion on the statute of limitations that would apply to the Wisconsin matter. Whether the statute of limitations has expired is not before this Court. Any statute of limitations determination is properly reserved to the judge presiding over the Wisconsin criminal case. The Government submits that the statute of limitations has not expired, and the grand jury

may still return a valid indictment against Carpenter. *See*, *e.g.*, 26 U.S.C. §§ 6531(1) & (8); *United States v. Aracri*, 968 F.2d 1512, 1517 (2d Cir. 1992); *United States v. Vogt*, 910 F.2d 1184, 1201 (4th Cir. 1990); *United States v. White*, 671 F.2d 1126, 1133-34 (8th Cir. 1982). This Court's advisory opinion should therefore be vacated.

    D.  Request for a *Wallace* Stay

If the Court is not inclined to dismiss the Rule 41(g) claim, the United States requests, in the alternative, that the Court vacate its order and grant a stay similar to that explained in *Wallace v. Kato,* 549 U.S. 384 (2007), so as to avoid the possibility of inconsistent outcomes. As the Supreme Court explained with regard to a false arrest claim brought before conviction,

> [I]t is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Id.* at 393-94 (citations omitted). The United States submits that, in the alternative to dismissal, the Court should vacate its Ruling and Order and, "in accord with common practice," *id.*, abstain from addressing the merits of Plaintiffs' motion until the criminal proceeding before Judge Chatigny and the investigation in Wisconsin are fully resolved.

## II.     Rule 41(g) Does Not Place an Evidentiary Burden on the Government.

The United States also seeks reconsideration of the Court's determination that the burden shifted to the United States to "demonstrat[e] why it is reasonable to retain seized files that are unrelated to a criminal or a civil proceeding, as required by Rule 41(g)." Doc. 55 at 13. The Court incorrectly found that the property seized is no longer needed for evidentiary purposes and implicitly held that the burden was on the United States to

establish its need. The United States submits that the Court was incorrect to place the evidentiary burden on the Government when there are ongoing criminal proceedings.

Rule 41(g) and its Committee Notes do not address the standard that governs whether property should be returned to a movant, and the Second Circuit has apparently not addressed the issue. *See* FED. R. CRIM. P. 41(g); *see also United States v. Gotti*, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003). In the absence of such guidance, courts have held that "although the burden of proof is on the movant while a criminal proceeding is pending, the burden shifts to the government 1) after trial, 2) after a guilty plea or 3) after the abandonment of the government's investigation." *Id.* (quoting *Chambers*, 192 F.3d at 377 & *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987)).

The adoption of burden shifting in a Rule 41(g) proceeding is motivated by a commonsense proposition: when the Government no longer has use for evidence, it should be required to establish the reasonableness of maintaining possession of it. *See Chambers*, 192 F.3d at 377 (burden shifts to government to demonstrate legitimate reason to retain property when the criminal proceedings have terminated); *see also Martinson*, 809 F.2d at 1369 (burden shifts to government to demonstrate legitimate reason to retain property when property is no longer needed for evidentiary purposes, either because trial is complete, defendant has pleaded guilty, or government abandoned investigation). Applying this burden-shifting framework, this Court stated that the United States "has not argued that the return or suppression of the 316 bankers' boxes of non-responsive documents would interfere with a grand jury investigation or other proceeding," and

found that the United States did not meet its burden to permit retention of the property. Doc. 55 at 13-14.

The record before the Court does not establish that the evidence at issue is no longer needed for evidentiary purposes. The Court's finding in this regard is based solely on Plaintiffs' pleadings, and is incorrect. There remains a pending criminal case in Connecticut and an active investigation in Wisconsin. Moreover, even if the burden shifted to the Government simply based on the representations contained in the Second Amended Complaint, the United States respectfully submits that it should not be faulted for failing to meet such burden when the Court specifically stated that the merits were not at issue. The Government thus urges the Court to vacate its order and place upon Plaintiffs the evidentiary burden to establish entitlement to Rule 41(g) relief.

## III. The Relief Granted by the Court Relies Upon an Unwarranted Expansion of the Second Circuit's Decision in *Ganias*.

The United States also requests that the Court reconsider its finding that the property at issue in this proceeding is "non-responsive" and its extraordinary order that the property be entirely forfeited by the Government through the return of any originals and destruction of any copies retained from the 316 bankers' boxes. The Court's factual determinations and the relief granted rely on a broad expansion of Second Circuit's ruling in *United States v. Ganias* that is not warranted in this case. Moreover, now that the Second Circuit has granted *en banc* rehearing of *Ganias*, its status as precedent is

uncertain and a broad expansion of the ruling is not prudent.[5]  *See United States v.*

*Ganias*, ___ F.3d ___, 2015 WL 3939426 (2d Cir. June 29, 2015).

Even if *Ganias* survives *en banc* review, it is distinguishable from the instant case.

The *Ganias* decision does not address the standard to be applied to a Rule 41 motion for

return of property at all.  Unlike this case, *Ganias* considered a post-indictment motion to

suppress which was denied following a full evidentiary hearing before the district court.

*Id.* at 130.  In *Ganias*, the government executed a search warrant in November 2003 at

the offices of an accountant to obtain records of two of the accountant's corporate clients.

*Id.* at 138.  The agents made forensic images of the accountant's computers to review

offsite.  *Id.*  By December 2004, the government had searched the computers and

segregated the responsive documents, but did not purge the non-responsive files.  *Id.*

Later, the government suspected that the accountant was personally involved in criminal

activity.  In April 2006, two and a half years after seizing the accountant's computers, the

government obtained a second warrant to search the retained mirror images for the

accountant's personal financial records.  *Id.* at 130.  The Second Circuit panel held the

government violated the accountant's Fourth Amendment rights by retaining the

---

[5] The grant of *en banc* review is notable not only because it is rare, *see Ricci v. DeStefano*, 530 F.3d 88, 92 (2d Cir. 2008) (Jacobs, J., dissenting from the denial of rehearing *en banc*), but also because the government's petition sought only panel rehearing on whether the agents acted in good faith.  The *en banc* order also instructs the parties to address the panel's finding of a Fourth Amendment violation. *Ganias*, 2015 WL 3939426, at *1.

unresponsive personal financial records seized pursuant to the original warrant and seeking to use them in a different criminal investigation.

*Ganias* relies upon unique factual circumstances elicited in a suppression hearing and opines on the constitutional ramifications of retaining non-responsive documents for later search. *Id.* at 140-41. One of the lynchpins of the *Ganias* decision was that the court found, following the testimony of an agent, that the search had been completed and responsive documents segregated. That has not happened here, given the delay that the targets have caused by their blanket privilege claims and the volume of evidence.

Here, the Court appears to find that the documents contained within 316 boxes are "non-responsive" because the Court believes they are no longer needed for evidentiary purposes. *See* Doc. No. 55 at 5 (defining two boxes, held by Department of Labor and IRS in Wisconsin, as "responsive"); *id.* at 10-11 & 13. The Court then appears to extend *Ganias* to the Rule 41 context and orders the return of originals and destruction of copies of the evidence seized. *Id.* But the Second Circuit panel in *Ganias* did not designate the material maintained by the Government as non-responsive because it was not necessary to an investigation or was held by the government for an excessive amount of time. Instead, it noted the parties' stipulation that the material was non-responsive to the original search warrant, held that the continued possession of such non-responsive material for future criminal investigations was improper, and held the later use of the improperly-maintained material to be unreasonable under the Fourth Amendment. *Ganias*, 755 F.3d at 135-36.

The United States submits that *Ganias* should not apply to this Rule 41(g) motion, and certainly does not hold that it is constitutionally-required that the evidence seized pursuant to the valid 2010 search warrant must be destroyed since it has not yet resulted in a Wisconsin indictment.[6]  The Government is unaware of any authority for the Court's determination that the Government may retain copies of Plaintiffs' validly-seized files only if it establishes that "those files are related to the government's investigation of a potential violation of section 7206(2) of Title 26 of the U.S. Code."  Doc. No. 55 at 10-11.  Rather, *Ganias* directs that, once the Government completes its search, it may not obtain a second warrant for evidence contained in non-responsive materials.

Rule 41(g), by its very terms, balances a movant's interest in the return of property and the Government's access to the property and its use in later proceedings.  *See* FED. R. CRIM. P. 41(g).  Rule 41 does not contemplate the destruction of evidence, but the return of property with appropriate safeguards for its preservation for use at trial.  *See* FED. R. CRIM. P. 41(g).[7]  By extending *Ganias* to the Rule 41(g) context in this manner, the Court has essentially entered an advisory opinion in this civil proceeding that certain evidence

---

[6] Again, unlike in *Ganias*, the IRS and Wisconsin prosecutors are in the midst of their review of the seized material, and thus have not segregated out "non-responsive" material.  Under these circumstances, the IRS's retention of all of the seized property for the purpose of carrying out its investigation is both proper and reasonable.

[7] Indeed, this is precisely what the parties' settlement before Judge Covello did – it permitted the Government to retain copies of relevant materials, returned irrelevant documents to the targets directly, and then permitted the targets' attorneys to retain the originals of the relevant materials. In that way, the targets had effective possession of the material, while relevant documents were preserved for subsequent litigation.

may not be used in any pending or future criminal cases. Such a ruling is not supported by *Ganias* and the remedy is not authorized by Rule 41(g), which speaks only of "the property's return." The Government respectfully requests that the Court reconsider the relief granted in light of the procedural posture of this case, the possibility that *Ganias* will not survive *en banc* review, and the purposes and language of Rule 41(g).

## IV.    The Court Granted Fed. R. Crim. P. 41(g) Relief Without a Proper Evidentiary Basis

Finally, the United States requests reconsideration because the Court determined the merits of Plaintiffs' motion and granted relief without an evidentiary basis. The Government submits that by issuing factual findings on the basis of Plaintiffs' pleadings alone, the Court erred. The Second Circuit has held that a district court may not issue findings on the merits of a Federal of Criminal Procedure 41(g) motion without receiving evidence on the factual issues necessary to decide the motion. Moreover, the facts of this case compel denial of Plaintiffs' motion.

Rule 41(g) permits a person deprived of property to move for the property's return. *See id.* at 7 (quoting FED. R. CRIM. P. 41(g)). However, the Rule further states, "[t]he court <u>must</u> receive evidence on any factual issue necessary to decide the motion." *Id.* (emphasis added). Here, the Court stated that the merits of Plaintiffs' motion for return of property were not ripe for consideration during the December 4, 2014 hearing on this matter, so no evidence was received. The Court then ruled upon the merits of the motion for return of property and granted relief, without ever receiving evidence.

The Second Circuit has faulted district courts that have ruled upon motions for return of property without receiving competent evidence. *Rufu v. United States*, 20 F.3d 63 (2d Cir. 1994), is particularly instructive. There, the movant filed a post-trial motion for return of property under Rule 41 seeking return of property seized upon his arrest. *Id.* at 64. The district court denied Rufu's motion solely based upon the representations by the Government that the property had been returned to Rufu's representative. *Id.* at 65. The Second Circuit reversed and remanded, holding that "[a]t the very least, the district court was required to take evidence and make factual findings" regarding the fate of the property seized before disposing of the motion. *Id.* *Rufu* stands for the general proposition that a district court may not accept unsworn factual assertions in determining a Rule 41 motion. *See, e.g., Panek v. United States*, 160 F. App'x 122 (2d Cir. 2005) (citing *Rufu*, 20 F.3d at 65); *see also United States v. Podlog*, 108 F.3d 1370 (table), 1997 WL 138472, at *2 (2d Cir. 1997) (citing *Rufu*, 20 F.3d at 65).

Similarly, in *Mora v. United States*, 955 F.2d 156 (2d Cir. 1992), the Second Circuit reversed the district court's denial of a post-conviction motion for return of property. There, the district court found that the motion for return of property was moot, based upon a representation by the Government that the personal property seized from the movant's hotel room was not in the Government's possession. *Id.* at 157. Reversing the summary denial of the petition, the Second Circuit explained that a trial court must rely on evidence, not mere representations by the litigants. *Id.* at 158. Many other circuit courts have likewise found error where a district court determined a Rule 41 motion for return of property without receiving sufficient evidence on disputed issues of fact. *See,*

*e.g., United States v. Bailey*, 407 F. App'x 74, 75-76 (8th Cir. 2011); *United States v. Cardona-Sandoval,* 518 F.3d 13, 15 (1st Cir. 2008); *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007); *United States v. lbinson*, 356 F.3d 278, 284 (3d Cir. 2004).

Here, the Court has made a number of factual findings based solely upon the allegations contained in Plaintiffs' Second Amended Complaint and the representations of counsel in opposition to the United States' motion to dismiss. *See* Doc. No. 55 at 4-6 & 9. There is no evidence before the Court to support the findings that (1) the Government has retained possession of Plaintiffs' "original files"; (2) the documents maintained by the Government are "non-responsive"; (3) the files seized are "unrelated to a criminal or civil proceeding"; and (4) only two bankers' boxes of documents are being utilized by the Government in connection with a criminal prosecution and in a pending investigation. The Government disputes these findings. In fact, the only competent evidence before the Court establishes that Carpenter is currently under criminal indictment, has access (through counsel, since he is incarcerated) to copies or originals of all seized documents, and, "[o]f the 322 boxes seized on April 20, 2010, 320 were returned on or before June 16, 2011 … [and] are in the possession of BASI or its Connecticut counsel, Halloran & Sage." Doc. No. 40-1 at 2; *see also* Doc. No. 40-2. Moreover, under Rule 41(g), the Court must receive evidence on the factual disputes that are necessary to determine Plaintiffs' motion. *See Rufu,* 20 F.3d at 65. Plaintiffs have submitted no evidence to support their claims for relief, and the competent evidence now before the Court does not support the claims or the remedy granted.

**Conclusion**

Because the Court's ruling is inconsistent with a prior settlement agreement, would imperil ongoing criminal proceedings, grants a remedy of return-and-destruction well beyond what is sought by Plaintiffs or contemplated by Rule 41(g), and provides injunctive relief through a *sua sponte* determination of facts based on Plaintiffs' pleadings alone, the United States respectfully requests that the Court reconsider and alter or amend the June 4, 2015 Ruling and Order by vacating it and dismissing or staying the Rule 41(g) claims in this lawsuit.

Respectfully Submitted,

For Defendant United States of America, improperly named and sued as Commissioner John Koskinen,

CAROLINE D. CIRAOLO
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Jordan A. Konig*
JORDAN A. KONIG (phv07255)
AUSTIN L. FURMAN
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55, Ben Franklin Station
Washington, D.C. 20044
(202) 305-7917/Fax: (202) 514-5238
Jordan.A.Konig@usdoj.gov

Local Counsel:

DEIRDRE M. DALY
United States Attorney

JOHN B. HUGHES
Assistant United States Attorney