IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER, and | ) | |
| GRIST MILL CAPITAL, LLC, | ) | |
| | ) | Case No. 3:13-CV-563-SRU |
| Plaintiffs, | ) | |
| | ) | Judge Stefan R. Underhill |
| v. | ) | |
| | ) | July 25, 2017 |
| COMMISSIONER, INTERNAL REVENUE | ) | |
| SERVICE, JOHN KOSKINEN, | ) | |
| SHAUN SCHRADER, VICTOR SONG, and | ) | |
| AND JANE AND JOHN DOES 1 TO 72, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT KATHY ENSTROM'S MOTION TO DISMISS**

Respectfully Submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Trial Attorney, Tax Division,
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
(202) 305-7917 (phone)
(202) 514-5238 (fax)
Jordan.A.Konig@usdoj.gov

Local Counsel:

DEIRDRE M. DALY
United States Attorney

JOHN B. HUGHES
Assistant United States Attorney

In their Opposition to Motion to Dismiss, Plaintiffs essentially concede that their claims against Kathy Enstrom are untimely and do not relate back to the filing of their April 19, 2013 complaint under the plain language of Rule 15 of the Federal Rules of Civil Procedure or any Second Circuit case interpreting that Rule.  *See* Doc. No. 124 at 5-6.  Instead, Plaintiffs entirely rely upon an equitable exception to Rule 15 that has been created by certain district judges.  *Id.* (citing *Byrd v. Abate*, 964 F. Supp. 140 (S.D.N.Y. 1997) "and its progeny").  Notwithstanding that the Second Circuit has never sanctioned the exception Plaintiffs seek– and it is nowhere contemplated by Rule 15 or the Second Circuit's holding in *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995) – Plaintiffs ask the Court to expand Rule 15 to cover situations in which the failure to timely name a party is not the result of a mistake (a fact that is otherwise fatal to their claims against Enstrom).  *See* Doc. No. 194 at 11.  Even if the Court were inclined to adopt what Plaintiffs boldly deem "the *Byrd* Rule," Plaintiffs admit in numerous ways that they cannot establish this exception.[1]

Plaintiffs excuse their 1,504 day delay in suing Enstrom based upon an equitable exception to Rule 15 that requires a plaintiff to establish that (1) the information as to the "John

---

[1] To the extent that Plaintiffs suggest that the Court previously rejected a limitations defense in this lawsuit, that contention is meritless.  In 2014, prior counsel for Schrader stated in a footnote that he does not represent any "John Doe" defendants, but that any new defendant could not be named due to the applicable statute of limitations.  *See* Doc. No. 20 at 3 n.4.  Schrader made no motion with regard to the unnamed defendants (nor did he have standing to do so), there was no briefing on the issue, and, indeed, Plaintiffs' own prior counsel explained that he "didn't prepare … for that argument[.]"  Doc. No. 35 at 5.  The Court's statement that Plaintiffs describe as a "[r]uling from the bench," Doc. No. 124 at 2, actually was the Court's description of his "understanding of the case law" under *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993).  *See* Doc. No. 35 at 7.  Indeed, rather than rejecting a limitations defense, the Court stated to Schrader's counsel, "I mean you're probably going to win this eventually but I guess the question is why you should win it today."  *Id.* at 8.  The Court did not hold that any future claim against an unnamed defendant would be timely, and certainly did not find that Plaintiffs would be permitted to bring new claims over three years later against Enstrom.

Doe" identity is particularly within the defendant's knowledge; (2) the plaintiff has diligently

attempted to ascertain the identity through discovery; and (3) the plaintiff seeks to amend shortly

after learning of that identity.  Doc. No. 124 at 5-6 (quoting *Alston v. Bellerose*, 2016 WL

554770, at *3 (D. Conn. Feb. 11, 2016)).  However, they plainly do not satisfy this test or the

other elements of Rule 15(c).  Nor do they sufficiently allege Enstrom's personal involvement.

Accordingly, Plaintiffs' complaint against Kathy Enstrom should be dismissed with prejudice.

I.     Kathy Enstrom's Identity Was Not "Particularly Within the Defendant's Knowledge

The most glaring flaw in Plaintiffs' argument is that – even based on their own

statements – the identity of Kathy Enstrom was in no conceivable way "*particularly* within the

defendant's knowledge."  Plaintiff Daniel Carpenter concedes that multiple individuals other

than defendant Shaun Schrader knew the identity of Kathy Enstrom while Plaintiffs' claims were

still ripe.  Plaintiffs admit that, over seven years before they filed this lawsuit against Enstrom,

(1) Carpenter's attorney learned Kathy Enstrom's full name while representing Carpenter in

connection with the April 20, 2010 search ("The emails refer to 'lead agent, Kathy Enstrom' and

'SSA Kathy Enstrom'") (Doc. No. 124-1 at ¶ 9); (2) Assistant U.S. Attorney Gordon Giampietro

knew Kathy Enstrom's name (*Id.*); (3) Carpenter personally "overheard some agents referring to

the agent in charge as 'Kathy,'" (*Id.* at ¶ 6); and (4) the Internal Revenue Service knew

Enstrom's identity (Doc. No. 124 at 4).  To be clear, not only did other individuals know Kathy

Enstrom's name, but Carpenter's own lawyer did so as well.[2]

---

[2] Further evidence obtained in connection with discovery regarding Shaun Schrader's qualified immunity
defense would establish that more individuals, including other attorneys for Carpenter, knew Enstrom's
full name in connection with the April 20, 2010 search.

In fact, Plaintiffs concede that Enstrom's identity was both "in the possession of Defendant Schrader *and AUSA Giampietro*, who worked with Agent Enstrom on the investigation and raid."  Doc. No. 124 at 6 (emphasis added).  Gordon Giampietro was a federal prosecutor in Wisconsin.  He is not a party to this case and has never been civil counsel to the United States, Agent Schrader, or Agent Enstrom.  That Enstrom's identity was known by Giampietro – not to mention Carpenter's own lawyer – obviously indicates that it could not have been "particularly in the possession of Defendant Schrader."

Enstrom's identity was also known by her employer, the IRS.  Remarkably, Plaintiffs fault Schrader (who is sued as an individual) for only providing an "*unofficial* list of the agents" Doc. No. 124 at 4 (emphasis added).  Of course, the fact that Schrader's identification of all agents present during the April 20, 2010 search was deemed by Plaintiffs to be an insufficient basis to amend their complaint "while waiting for the Doe identifications from the IRS," Doc. No. 124 at 4, a non-party, makes manifest that the identity of Kathy Enstrom was in no way "particularly within the defendant's knowledge."

Plaintiffs cannot seriously argue that a prospective defendant's identity is in the "particular knowledge" of a defendant for the purposes of the Southern District's *Byrd* exception unless a plaintiff has "personal knowledge" of that individual's full name within the limitations period.  *See* Doc. No. 124-1 at ¶ 13 ("I never learned Agent Enstrom's last name until I recently read it in documents produced by Defendant Schrader and the IRS in response to discovery requests in the present case").  Plaintiffs cite no case, in any context, that distinguishes between notice to an individual and notice to his attorney.  This is especially true where a plaintiff must establish that the identity of an individual is within the *particular* knowledge of a defendant.

Instead, the cases cited by Plaintiffs involve municipal or state defendants who maintained total control over the information about intended defendants who were described with "a fair amount of specificity."  *Alston*, 2016 WL 554770, at *3; *Feliciano v. County of Suffolk*, 2013 WL 1310399 (E.D.N.Y. Mar. 28, 2013); *Byrd*, 964 F. Supp. at 141; *Archibold v. City of Hartford*, 274 F.R.D. 371, 380 (D. Conn. 2011).  That simply is not the case here.

II.    Plaintiffs Did Not Diligently Seek Enstrom's Identity Through Timely Discovery

Plaintiffs' attempt to be excused compliance with the three year statute of limitations is further undermined by their total failure to seek Enstrom's identity from Schrader while their claims against her were still ripe.  Plaintiffs urge that they "requested identification of the raiding agents" from "the government," Doc. No. 124 at 12, and particularly fault prosecutor Gordon Giampietro for declining to "identify the Doe defendants almost seven years ago[.]"  *Id.* at 8; *see also* Doc. No. 124-1 at ¶ 7.  Their argument fails.

First, nowhere do Plaintiffs allege that they took steps to specifically ascertain the identity of Kathy Enstrom.  *See* Doc. No. 124 at 6 (citing *Alston,* 2016 WL 554770, at *3).  This is not surprising since Carpenter's attorney already knew her name.  Plaintiffs submit that GMC's lawyer only asked AUSA Giampietro, nearly three years prior to filing their *Bivens* lawsuit, "to identify the names of the government officers" who assisted with the April 20, 2010 search warrant execution.  Doc. No. 124 at 2; *see also* Doc. No. 124-1 at ¶ 7.  They contend that, after the statute of limitations expired, and in the context of this case, Plaintiffs' counsel engaged in "cordial discussions" seeking disclosure of "the Doe identities."  Doc. No. 124 at 3.  But Plaintiffs nowhere state that they asked anyone – much less a defendant in this case – to identify "Agent Kathy," or the Supervisory Special Agent who acted as lead agent on April 20, 2010.  They certainly do not urge that they engaged in discovery within the limitations period.  It is a far different matter to generally ask for a list of participating agents from a prosecutor

4

supervising a grand jury investigation than to timely seek the name of a particular individual – here, Kathy Enstrom – in contemplation of a civil lawsuit.  And again, AUSA Giampietro had previously discussed Kathy Enstrom with Carpenter's counsel, so it is implausible that he stonewalled Plaintiffs' attempt to timely identify Enstrom.

In any case, as Plaintiffs appear to concede, *see* Doc. No. 124 at 9-10, none of the claims made against "Unknown Agents 1-72" raise any conduct eventually alleged against Kathy Enstrom.  *Compare* Doc. No. 1 *with* Doc. No. 114.  The so-called "Doe defendants" were faulted because they allegedly executed the search warrant in an improper manner, while Enstrom is faulted for failure to properly supervise or train.  *See* Doc. No. 1 at ¶¶ 9-12 & 19-20.  So when GMC's counsel informally asked for the names of the "Doe Defendants," it is not clear that such request included Kathy Enstrom at all.[3]  Plaintiffs do not contend that they sought the last name of "Agent Kathy" while their claims were still ripe.

Second, Plaintiffs do not allege that they timely requested the identity of Kathy Enstrom from any past or current defendant in this *Bivens* litigation.  They cite just one instance where they sought any information while their claims against her were timely.  They claim that,

> On or about June 3, 2010, GMC's prior counsel met with AUSA Gordon Giampietro at the federal courthouse in Hartford.  This meeting occurred after a hearing before Judge Covello in Rule 41(g) proceedings brought by GMC and others.  GMC's prior counsel asked AUSA Giampietro to identify the names of the government officers who conducted the April 20, 2010 raid.  AUSA Giampietro would only say that there were "72 agents," and declined to identify them.

---

[3] It is well established that a "John Doe" defendant is a legal nullity.  *See, e.g., Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1075 (2d Cir. 1993).  Second Circuit precedent makes clear that Kathy Enstrom is a new defendant to this action; she is not "Jane Doe."  *Id.*  Accordingly, a request to identify "the Doe defendants" is not the same as a request for the identity of Kathy Enstrom, or even to name the Supervisory Special Agent on scene.

Doc. No. 124-1 at ¶ 7.  But Gordon Giampietro is not a party to this case, and has never

represented a party to this case.  That Giampietro "was deeply involved in these matters," Doc.

No. 124 at 2, certainly does not indicate that his conduct can be imputed to Schrader and

Enstrom.  Even if his statements could be attributed to "the government," Doc. No. 114 at 11,

Plaintiffs seek damages from Schrader and Enstrom only "in their individual capacities."  Doc.

No. 114 at ¶¶ 6-7.  Although Plaintiffs urge – incorrectly – that "[t]he government had unique

access to knowledge," Doc. No. 124 at 11, the United States is not a defendant in this lawsuit.[4]

*See id.*  Regardless, Plaintiffs cannot be heard to argue that Giampietro engaged in wrongdoing

by failing to identify Enstrom to GMC's counsel, while at the same time urging that they had no

notice when Giampietro discussed "SSA Kathy Enstrom" with Carpenter's own counsel in 2010.

In addition, Plaintiffs entirely fail to show diligence in their efforts to identify Kathy

Enstrom.  They cite no instances of *any* timely request for her name – formal or informal – to the

Internal Revenue Service, the United States, Schrader, or, indeed, even their own attorney.

Diligence certainly cannot be established by Plaintiffs' allegation of one verbal request to AUSA

Giampietro to disclose the identities of "the government officers who conducted the April 20,

2010 raid."  Doc. No. 124-1 at ¶ 7.  Although they fault Schrader's prior counsel for arguing that

disclosure of the names of all agents who participated in the April 20, 2010 search would be

futile, Plaintiffs do not contend that they actually requested the disclosure of Enstrom's identity

---

[4] It is astonishing that Plaintiffs suggest that "the government" engaged in conduct to "run out the statute
of limitations clock."  Plaintiffs' lawsuit against Schrader was filed on April 19, 2013, *one day* before the
limitations period expired. Schrader finally was served with the complaint on August 1, 2013, and service
on all defendants was perfected on October 1, 2013.  *See* Doc. Nos. 10 at 4 & 27 at 8.  Plaintiffs cite no
evidence – and none exists – to show that Schrader or his counsel engaged in any conduct that caused
their failure to name Kathy Enstrom within the limitations period permitted by Rule 15 and *Aslanidis*.

from Schrader's counsel or took any steps to obtain discovery of her name prior to this year.  *See*

Doc. No. 124 at 3.  Remarkably, they fault Schrader for failing to show diligence in *opposing*

disclosure of the names of all agents present on April 20, 2010.  *Id.* ("the government did not file

a motion or brief seek [sic] judicial enforcement of its refusal to disclose the Doe identities").

Plaintiffs' suggestion that Schrader's valid assertion of qualified immunity "in the four years

since this case was filed [was] a way to avoid discovery of this information," Doc. No. 124 at 8,

is both incorrect and irrelevant.  Schrader is fully entitled to assert his immunity from Plaintiffs'

*Bivens* claims, and nothing about Schrader's litigation conduct that occurred months or years

after the limitations period expired possibly could have prevented Plaintiffs from timely naming

Enstrom as a defendant.

III.    Plaintiffs' Allegations Do Not Otherwise Satisfy Rule 15

Even ignoring that their failure to name Kathy Enstrom cannot be excused by the

equitable exception created in *Byrd*, Plaintiffs still do not satisfy Rule 15.  That Rule permits

relation back only where a new party "received such notice of the action that it will not be

prejudiced in defending on the merits; and knew or should have known that the action would

have been brought against it, but for a mistake concerning the proper party's identity."  FED. R.

CIV. P. 15(c)(1)(C).  "That notice must occur within the Rule 4(m) period, which, at the time,

was 120 days."  Doc. No. 124 at 7.  Plaintiffs' arguments make clear that Enstrom could not have

had timely notice that she was an intended defendant.

Plaintiffs appear to concede that they failed to timely allege any supervisory liability

claims against a placeholder defendant, or otherwise indicate that they would later seek to hold

Enstrom responsible under a theory of supervisory liability.  *See* Doc. No. 124 at 9-10.  The

complaint alleges supervisory liability claims only against then-defendants Song and Shulman.

*See* Doc. No. 1 at ¶¶ 22 & 27.  Instead, Plaintiffs urge that their allegations of supervisory

liability against Song and Shulman, and their attempts to allege *other* wrongdoing against "John

Doe" defendants, should have alerted Enstrom that they later might raise "claims of

constitutional failure in the planning, preparation and supervision of the underlying raid" against

her.  *Id.*  But that argument conflates the relatedness requirement of Rule 15(c)(1)(B) with the

notice requirement of Rule 15(c)(1)(C).  That is, just because Plaintiffs' allegations involve the

same "conduct, transaction or occurrence" sufficient for an amended "claim or defense" to relate

back under Rule 15(c)(1)(B) does not mean that Enstrom, as a new party, had timely notice that

such allegations would be made against her, so as to satisfy Rule 15(c)(1)(C).

Moreover, Plaintiffs make the implausible argument that Enstrom should be determined

to have had constructive notice within the limitations period, and should have "take[n] steps to

prepare a defense," regarding the allegations made against her in the Third Amended

Complaint.[5]  *See* Doc. No. 124 at 7-10.  To find constructive notice under the cases cited by

Plaintiffs, though, the Court must determine that Enstrom's counsel (whom she did not retain

until this year) "knew or should have known," by August 17, 2013, of allegations against her that

were not made until May 26, 2017.  August 17, 2013 is over a month before Plaintiffs properly

served all named defendants (and, again, years before Plaintiffs would first raise supervisory

liability claims against someone other than Song, Schrader, or Shulman).  *See* Doc. No. 27 at 8.

The cases cited by Plaintiffs regarding notice all consider Section 1983 lawsuits against

municipal or state actors where the representation of an clearly identified intended defendant

---

[5] Plaintiffs' supposition that Enstrom "likely" received actual notice within the limitations period
obviously does not establish such notice.

would be automatic.  *See Feliciano,* 2013 WL 1310399 at *8 (citation omitted) ("Constructive

notice is derived from the presumed knowledge of the attorney who represents the original

defendant(s) and who would represent the prospective defendant(s) if leave to amend were

granted"); *Byrd*, 964 F. Supp. at 141; *Archibold*, 274 F.R.D. at 380; *Alston*, 2016 WL 554770, at

*3.  But Enstrom's representation by the Department of Justice is not automatic, *see* 28 C.F.R.

§ 50.15, and the United States is not a party to this *Bivens* lawsuit (and could not be, due to

sovereign immunity).  Schrader and Enstrom are sued individually, and are represented as

individuals.  It cannot be the case that Enstrom's choice to be represented by the Department of

Justice, rather than private counsel, has the effect of defeating the otherwise-applicable statute of

limitations.  If that is the case, Enstrom could have overcome the Southern District's *Byrd* test

simply by choosing to be represented by other counsel, or could do so by replacing her attorney.

IV.    Plaintiffs Fail to State a Claim Against Kathy Enstrom

Plaintiffs entirely decline to justify their boilerplate allegations of supervisory liability or

explain how their deficient complaint pleads Enstrom's personal involvement in the violations

alleged.  *See* Doc. No. 124 at 12-13.  Instead, Plaintiffs incorrectly assert that the Court has

already determined that their claims in a now-superseded complaint establish the personal

involvement of Schrader, so it must be the "law of the case" that the same allegations in a new

complaint establish the personal involvement of Enstrom.  *Id.*  However, as the Second Circuit

has explained,

> The doctrine of the law of the case posits that if a court decides a rule of law, that
> decision should continue to govern in subsequent stages of the same case.  Courts
> apply the law of the case doctrine when their prior decisions in an ongoing case
> either expressly resolved an issue or necessarily resolved it by implication.
> Application of the law of the case doctrine is discretionary and does not limit a
> court's power to reconsider its own decisions prior to final judgment.

*Aramony v. United Way of Am.,* 254 F.3d 403, 410 (2d Cir. 2001) (citations and internal quotation marks omitted).

Here, the Court was never asked to determine whether Plaintiffs adequately alleged the personal involvement of Enstrom, and never considered the argument that Plaintiffs' boilerplate allegations of supervisory liability and failure to train were insufficient under *Iqbal.*  Instead, Schrader filed a Rule 12(b)(6) motion on the basis of qualified immunity and because Plaintiffs' constitutional claims failed to state a claim for relief.  *See* Doc. No. 74 at 10.  Although Schrader asked the Court to consider evidence that he had no personal involvement in the conduct alleged by Plaintiffs, the Court specifically declined to address Schrader's argument that "Plaintiffs may not recover civil damages against Schrader personally because IRS policies over which he had no authority, or conduct by other officials, allegedly caused violations of Carpenter's Fourth, Fifth, and Sixth Amendment rights."  Doc. No 74 at 28-29; *see also* Doc. No. 82.  To be clear, Schrader never raised the facial deficiency of Plaintiffs' prior allegations, so it cannot be the "law of the case" that Plaintiffs' vague and conclusory claims of deliberate indifference and failure to train in their fourth complaint state a claim against Enstrom that is plausible on its face.

## CONCLUSION

Plaintiffs' claims against Kathy Enstrom are time-barred, and Plaintiffs have failed to establish compliance with Rule 15 or any exception to that Rule.  Moreover, their boilerplate assertions of supervisory liability fail to sufficiently plead the personal involvement of Kathy Enstrom.  Accordingly, Plaintiffs' claims against her should be dismissed with prejudice.

## CERTIFICATE OF SERVICE

I certify that on July 25, 2017, I filed the *Reply Brief in Support of Kathy Enstrom's Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all parties registered to receive such notice.

/s/ Jordan A. Konig
JORDAN A. KONIG
Trial Attorney, Tax Division
U.S. Department of Justice

11