IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER, and | ) | |
| GRIST MILL CAPITAL, LLC, | ) | |
| | ) | Case No. 3:13-CV-563-SRU |
| Plaintiffs, | ) | |
| | ) | Judge Stefan R. Underhill |
| v. | ) | |
| | ) | April 5, 2018 |
| COMMISSIONER, INTERNAL REVENUE | ) | |
| SERVICE, JOHN KOSKINEN, | ) | |
| SHAUN SCHRADER, VICTOR SONG, and | ) | |
| AND JANE AND JOHN DOES 1 TO 72, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY**

In their fifth separate motion to require the United States to destroy lawfully-seized evidence, Plaintiffs ask the Court to revive and expand its stayed June 4, 2015 order (which required the return and destruction of property that was not being utilized in Plaintiff Daniel Carpenter's criminal case). Raising arguments contrary to their own statements before the Second Circuit, Plaintiffs incorrectly urge that "the grounds for the stay are now obsolete[.]" Doc. No. 142 at 1. Plaintiffs now seek the return or destruction of 26 boxes or portions of boxes held by the Department of Labor in connection with the pending criminal case against Daniel Carpenter, the mirror images of servers and drives held by IRS under a search warrant issued in that case, and a hard drive containing electronic document scans that the IRS maintained after it returned over 300 boxes of responsive original documents between April 2010 and June 2011.

Plaintiffs' underlying 41(g) request is devoid of both factual and legal merit. The undisputed evidence before the Court compels that Plaintiffs' motion has long been moot in light of (1) the return of all paper documents in IRS custody by June 16, 2011; (2) a pending Rule 41(g) motion in a separate case seeking return of nearly all of the same documents from the

Oral Argument is Not Requested

Department of Labor, *see Carpenter v. Allen*, No. 3:14-CV-741-VAB; (3) Carpenter's

unsuccessful Rule 41(g) motions for return of all of the same evidence in a criminal case still

pending before Judge Robert N. Chatigny, *see United States v. Carpenter,* No. 3:13-CR-226-

RNC, 2015 WL 9461496, at *7 (D. Conn. Dec. 24, 2015); and (4) Plaintiffs' concession before

the Second Circuit that they are not entitled to the return of originals or copies of documents

relevant to the criminal case until Carpenter's conviction is final on direct review.

      Because Plaintiffs have an adequate legal remedy before Judge Chatigny, Plaintiffs' Rule

41(g) motion should be denied, and this civil action should, at long last, be dismissed.

## Background

### *IRS Search of 100 Grist Mill Road*

      The facts underlying this motion are well known to the Court.  On April 20, 2010, agents

with the Internal Revenue Service Criminal Investigation division executed a federal search

warrant at an office building located at 100 Grist Mill Road, Simsbury, Connecticut.  The IRS

seized 322 boxes of documents and imaged 11 computers or servers, one thumb drive, and one

external hard drive.  *See* Doc. No. 144 at 5-19 (Ruling on Motions to Dismiss and for Summary

Judgment).

### *Rule 41(g) Proceedings Before Judge Covello*

      Companies claiming ownership of the seized evidence soon filed two Rule 41(g) motions

for return of property in the District of Connecticut.  In one of those cases, Benistar Admin

Services Inc. ("BASI"), an umbrella company for the entities located at 100 Grist Mill Road,

identified itself as the "owner and custodian" of all property seized during the execution of the

search warrant, including all of the computers that were imaged.  *See* Doc. No. 48-1 at 1-2;

*Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 4.  Carpenter denies

ever having had any role with BASI.  *See* Doc. No. 129-6 at 7.  BASI requested the immediate

return of "all property seized by the IRS on April 20, 2010."  *See Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 6.

Seven days later, Plaintiff GMC and 15 other parties, including numerous entities controlled by plaintiff Daniel Carpenter, filed a second Rule 41(g) miscellaneous case seeking return of the same evidence.  *Pettibone Tavern, LLC v. IRS*, No. 3:10-mc-64-AVC.  In that lawsuit, the petitioners sought "the immediate return of all property illegally seized by the Internal Revenue Service ('IRS') during its illegal April 20, 2010 'commando-like' raid and illegal search of the Petitioners' offices located at 100 Grist Mill Road in Simsbury, Connecticut[.]"  *Id.*, Doc. No. 1 at 1-2.[1]  Carpenter was not a party to either Rule 41(g) case. Carpenter himself still does not claim a property interest in the vast majority of the items seized on April 20, 2010.  This Court has explained that "Carpenter contends that 40 of the boxes belonged to Grist Mill Capital.  The remaining boxes belong to either Benistar or Benistar Administrative Services, Inc."  Doc. No. 144 at 17.

Several individuals and entities – including Carpenter – issued blanket claims of privilege over the seized materials in Wisconsin, where the IRS-CI investigation and related grand jury proceedings were based.  *See* Doc. No. 141-1 at ¶ 4.  Carpenter and other individuals and entities asserted privilege over 76,918 documents.  *Id.*  In order to resolve the blanket privilege claims, United States District Judge Lynn Adelman of the Eastern District of Wisconsin issued three orders regarding the operation of a filter team to review the seized material for privilege.  *Id.* at ¶ 5.

---

[1] The Court has recently concluded that "[t]he record on summary judgment reveals a search that was far less violent or burdensome compared to the search that Carpenter's pleadings" allege.  Doc. No. 144 at 33.

The parties settled the Rule 41(g) litigation pending before Judge Covello when the Government agreed to return the hard copy documents after a reasonable time, and the movants agreed to stay their Rule 41(g) motions until they received the property. *Id*. at 2. Boxes that contained what the IRS filter team determined to be potentially relevant documents would be scanned onto a hard drive and then maintained in the custody of Halloran and Sage LLP, BASI's Connecticut counsel, while boxes with documents that the IRS filter team determined were not potentially relevant would be returned directly to 100 Grist Mill Road. Doc. No. 141-4 at ¶ 8; Doc. No. 140-1 at ¶ 7. Judge Covello accepted the parties' stipulated resolution. *Id*.; *see also Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 22; No. 3:10-cv-64-AVC, Doc. No. 44. Pursuant to the settlement agreement and Judge Adelman's orders, the filter team scanned the responsive documents, returned 320 of the 322 boxes to BASI or Halloran and Sage, on or before June 16, 2011, and the investigators retained two original boxes under a subsequent agreement with Carpenter's Wisconsin counsel. *See* Doc. No. 40-1 at 2 & 141-1 at ¶ 18. Due to Plaintiffs' broad and dilatory privilege claims, the IRS's review of the scanned documents was significantly delayed. *See* Doc. No. 141-7 at ¶¶ 10-11.[2]

*DOL Search Warrants and STOLI Case Before Judge Chatigny*

In May 2011, the Department of Labor obtained search warrants in an investigation of Carpenter's participation in a separate fraudulent scheme involving stranger-originated life insurance ("STOLI"). Doc. No. 141-3 at ¶ 7. Some of the evidence seized by the IRS in 2010

---

[2] Plaintiffs incorrectly contend that "the Government has blamed the targets of the investigation for the Government's delays in sorting out unresponsive information." Doc. No. 142 at 9. In fact, IRS-CI filter teams reviewed all of the boxes and returned all boxes with "unresponsive information" to 100 Grist Mill Road by June 16, 2011 – nearly two years before this lawsuit was filed. *See* Doc. No. 141-1 at ¶ 11. Plaintiffs' baseless assertions of privilege over 76,918 documents caused delay to the investigators' *review* of the responsive documents. Doc. No. 141-7 at ¶¶ 10-11.

was relevant to the DOL investigation.  *Id.*  Therefore, the Department of Labor obtained search warrants in Connecticut to copy the images of the 11 computers or servers, one thumb drive, and one external hard drive obtained in April 2010 by the IRS; a search warrant in Wisconsin for a small amount of material still being held by the IRS; and a grand jury subpoena to Halloran and Sage for certain material contained in the boxes that had been returned to Halloran and Sage pursuant to the Rule 41(g) settlement.  *Id.*

On December 12, 2013, Carpenter was charged in the United States District Court for the District of Connecticut in a 33-count criminal indictment with conspiracy to commit mail and wire fraud, aiding and abetting, and substantive counts of mail and wire fraud as a result of the Department of Labor investigation (the STOLI case).  *See United States v. Carpenter*, No. 3:13-cr-226-RNC, Doc. No. 1.  The case was assigned to Judge Chatigny.  On May 14, 2014, the grand jury returned a 57-count superseding indictment against Carpenter related to his conduct in devising and executing a scheme to defraud life insurance companies by using falsehoods to induce them to issue high-value universal life insurance policies to straw insureds.  *See United States v. Carpenter*, No. 3:13-CR-226-RNC, Doc. No. 53.

On September 15, 2014, Carpenter submitted two motions in the STOLI case seeking the return or destruction of the same evidence at issue in this civil proceeding.  *See United States v. Carpenter*, No. 3:13-CV-226-RNC, Doc. No. 81 at 25 & 29-32; Doc. No. 83 at 28-31.  Carpenter raised the same allegations of wrongdoing, and sought as a remedy the suppression and return or destruction of the very same evidence, as in the proceeding now before this Court.  *Compare id.,* Doc. Nos. 82 & 83 ("Motion to Suppress Evidence/Documents Seized From the Raid of April 20, 2010"), with Doc. No. 114 (Third Amended Complaint).

Judge Chatigny denied Carpenter's motion to suppress the evidence seized both during the IRS's 2010 search and the DOL's 2011 search, and also denied Carpenter's request for return

of all such documents pursuant to Rule 41(g).  *See United States v. Carpenter*, No. 3:13-CR-226-RNC, 2015 WL 9461496 (D. Conn. Dec. 24, 2015).  Judge Chatigny denied both motions in their entirety, specifically finding that the 2010 IRS warrant and a subsequent 2011 search warrant obtained by Department of Labor investigators were sufficiently particularized and not overbroad, *id.* at *5, that no material omission or misstatement in the search warrant affidavits were established, *id.* at *5-*6, and that probable cause supported both searches, *id.* at *6.

Regarding Carpenter's Rule 41(g) request to return all documents from both 2010 and 2011 searches, Judge Chatigny distinguished the panel opinion in *United States v. Ganias,* 755 F.3d 125 (2d Cir. 2014), *vacated at* 824 F.3d 199 (2d Cir. 2016) (*en banc*), explaining that the review of the electronically-stored information obtained in the searches was still ongoing, since blanket claims of privilege asserted by several individuals and entities (including Carpenter) prevented the review of the documents until June 2013 and the Government did not have a full opportunity to review the voluminous materials.  *Carpenter*, 2015 WL 9461496, at *7 (*citing In the Matter of a Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386 (S.D.N.Y. 2014)).  In denying Carpenter's request for suppression and return of all documents during the two searches (including all of the documents at issue in this civil lawsuit), Judge Chatigny held,

> In this case, the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial.  The defendant, on the other hand, has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records.  Nor has he shown that he needs any of the documents in order to prepare his defense or for some other legitimate purpose.  Balancing the interests of the parties in light of the delay caused by the privilege litigation, and the volume of the documents, the Government's retention of the documents pending further proceedings in this case is reasonable.

*Carpenter,* 2015 WL 9461496, at *7.

Judge Chatigny therefore denied Carpenter's motion to suppress the evidence seized during the 2010 and 2011 searches and also denied his request for return of all such documents pursuant to Rule 41(g).  *See id.*  Directly addressing the return of items sought in this civil case, Judge Chatigny explained,

> Unlike the scenario in *Ganias*, the Government represents that review of the electronically stored information obtained in the searches at issue here is still ongoing.  The Government explains that blanket claims of privilege prevented review of the documents until June 2013 and that it has not had a full opportunity to review the documents, which are voluminous.  Crediting the Government's representations, it is not refusing to return or destroy materials simply because they might be useful in a subsequent investigation.
>
> * * *
>
> In this case, the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial.  The defendant, on the other hand, has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records.  Nor has he shown that he needs any of the documents in order to prepare his defense or for some other legitimate purpose.  Balancing the interests of the parties in light of the delay caused by the privilege litigation, and the volume of the documents, the Government's retention of the documents pending further proceedings in this case is reasonable.

*Id.* at *6-*7.

A bench trial was held in the STOLI case in February and March of 2016.  Judge Chatigny determined Carpenter's testimony to be unworthy of belief and found that "there is overwhelming evidence that [Carpenter] orchestrated a scheme to defraud the carriers into issuing policies based on … misrepresentations[.]"  *United States v. Carpenter*, 190 F. Supp. 3d 260, 267 n.7 (D. Conn. 2016), *see also id*. at 276 n.17 & 280 n.23.  Accordingly, Carpenter was found guilty of each of the 57 counts of the superseding indictment.  *Id*. at 297.  Carpenter is awaiting sentencing.  *See United States v. Carpenter*, No. 3:13-CR-226-RNC, Doc. No. 343.

*Civil Litigation Related to DOL Search*

On May 22, 2014, Plaintiffs filed another Rule 41(g) motion within *Carpenter v. Allen*, No. 3:14-CV-741-VAB.  In that lawsuit, Plaintiffs seek damages from the Department of Labor's case agent and two other federal agents involved in the STOLI case and 100 "John Does and Jane Does."  *See Carpenter v. Allen*, No. 3:14-CV-741-VAB, Doc. No. 1.  Plaintiffs also seek an order for the return of all property seized by the Department of Labor in its May 26, 2011 search, including the same 26 items suddenly sought by Plaintiffs' Motion to Lift Stay in this case.  *See id.* at ¶¶ 31-33 & Doc. No. 38 at 4-6.  That civil lawsuit (including the request for return of all documents held by the Department of Labor) has been stayed until Carpenter's criminal matter is resolved.  *See* Doc. Nos. 28, 38, & 40.

*Civil Litigation Related to IRS Search*

On April 19, 2013, Plaintiffs filed this civil lawsuit against the Commissioner of the Internal Revenue Service, the case agent assigned to the criminal investigation, and others.  *See* Doc. No. 1.  Plaintiffs did not sue the United States, and have never sought to substitute the United States as a party.  *Id.*  Among the constitutional claims raised pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs urged that the items seized on April 20, 2010 went "beyond the scope of what was permitted by the warrant," and unlawfully included attorney-client communications.  Doc. No. 114 at ¶¶ 12 & 18. Although the IRS had returned custody of 320 boxes to Plaintiffs nearly two years prior, Plaintiffs falsely urged in their first complaint that "only four of the banker's boxes have been returned to the plaintiffs by the defendants."  Doc. No. 1 at ¶ 13.  Plaintiffs persisted in the same false claim in their Third Amended Complaint, filed last year.  *See* Doc. No. 114 at ¶ 26; *but see* Doc. No. 141-1 at ¶ 11 & Doc. No. 141-5 (establishing the return of original documents to Plaintiffs or BASI).

The United States moved to dismiss and for summary judgment on the Rule 41(g) issues. *See* Doc. Nos. 38 & 39.  In a June 4, 2015 Ruling and Order, the Court denied the motion and held that Plaintiff's allegations of fact, taken as true, established subject-matter jurisdiction and stated a claim for return of property under Fed. R. Crim. P. 41(g).  Doc. No. 55 at 6-8.

Although Plaintiffs did not submit evidence to support their motion,[3] the Court in the same order granted Plaintiffs' motion, ordering not only the return of the original documents, but also the destruction of physical and electronic copies and mirror images maintained by the Government.  *See* Doc. No. 55 at 13-16.  Accordingly, it ordered the Government to "return to the plaintiffs the originals of the non-responsive documents held in the 316 bankers boxes, and it shall destroy any and all copies, electronic or otherwise, of all non-responsive documents (including computer 'mirror images') seized during the April 20, 2010 search."  *Id.*  However, the Court declined to exercise jurisdiction with respect to "responsive" documents, which apparently referred to the documents relevant to the STOLI case before Judge Chatigny.  *See id.* at 16.

The United States[4] filed a motion for reconsideration of, and to alter or amend, the Court's June 4, 2015 Ruling and Order.  *See* Doc. No. 59.  The United States urged that the Court's ruling was inconsistent with the agreement settling the Rule 41(g) claim before Judge Covello regarding the same property, would inadvertently imperil the STOLI case before Judge

---

[3] At the motion hearing, the Court stated, "I'm not reaching the merits today of the 41(g) issue because what I have before me is the motion to dismiss.  So the only question is whether that claim should proceed in this Court or whether this Court has jurisdiction, et cetera."  Doc. No. 58 at 7-8.

[4] The United States has never been named as a party to this lawsuit, but because the IRS Commissioner was sued in his official capacity, the claims against him were construed as being alleged against the United States.  *See Channer v. Murray,* 247 F. Supp. 2d 182, 186 (D. Conn. 2003) (Underhill, J.) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)).

Chatigny and the then-pending Wisconsin grand jury investigation (because it required the destruction of documents relevant to those criminal proceedings), granted a remedy of return and destruction well beyond that sought by Plaintiffs or contemplated by Rule 41(g), and granted relief based on Plaintiffs' pleading allegations alone. *See* Doc. No. 60. The United States also noted that the Second Circuit had granted *en banc* review to the panel's opinion in *Ganias*, limiting that decision's precedential value. Carpenter did not file a response.

The United States alerted this Court to Judge Chatigny's order denying Carpenter's motion to suppress on January 15, 2016. *See* Doc. No. 61. The Court then issued a January 29, 2016 order which stated, in part, that,

> I have not yet ruled on Koskinen's motion for reconsideration because my initial ruling relied in part on *United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), *reh'g en banc granted*, 791 F.3d 290 (2d Cir. 2015). I am holding my ruling until the Second Circuit issues its *en banc* decision in that case.

Doc. No. 62. The Court entered a minute order on February 5, 2016 denying the United States' motion for reconsideration without prejudice to renewal following an *en banc* ruling on *Ganias*. *See* Doc. No. 63. The Court stayed the June 4, 2015 Ruling and Order pending further order. *Id*.

Because the Court's denial of the motion for reconsideration might be construed as converting the June 4, 2015 Ruling and Order into a final, appealable order granting Plaintiffs' Rule 41(g) motion, the United States filed a protective notice of appeal on April 4, 2016. *See* Doc. No. 64. Contrary to Plaintiffs' belief that the appeal was "improvident," Doc. No. 142 at n.5, the United States was concerned that Second Circuit law mandated that a renewed motion for reconsideration would not toll the time period for filing a notice of appeal of the original June 4, 2015 Order. *See, e.g., Glinka v. Maytag Corp.*, 90 F.3d 72, 74 (2d Cir. 1996) ("Allowing subsequent motions to repeatedly toll the filing period for a notice of appeal would encourage frivolous motions and undermine a fundamental canon of our legal system, to promote the finality of judgments.")

The United States then asked the Second Circuit to hold the appeal in abeyance pending the *en banc* decision in *Ganias*. *See Carpenter v. Koskinen*, No. 16-1036 (2d Cir.) (Doc. No. 23). The Second Circuit denied that motion on May 26, 2016. *See id.,* Doc. No. 28. On May 27, 2016, the *en banc* Second Circuit issued its opinion in *Ganias.* The opinion affirmed Ganias's conviction, holding that because the government relied in good faith on a search warrant, the Court need not decide whether the government violated the Fourth Amendment in maintaining possession of "non-responsive" documents. *See Ganias*, 824 F.3d at 209 & 211.

*Second Circuit Consideration of the United States' Appeal of the Court's June 2015 Order*

Last year, the Second Circuit considered the United States' appeal of the Court's June 4, 2015 order. At oral argument[5] and in its subsequent Summary Order remanding the case, the Second Circuit recognized the significant narrowing of the issues since 2015 and the foolishness of having three separate judges consider the underlying issue. *See* Doc. No. 121.

When Judge Guido Calabresi asked Carpenter's counsel what was sought in this Rule 41(g) proceeding, he responded that, "Mr. Carpenter is trying to get the return of all documents that aren't plausibly related to the Department of Labor prosecution pending in the District of Connecticut right now, and that includes copies." *Id.* at 13:09-13:19. Confirming, Judge Denny Chin asked, "You agree that you are not entitled to the return of originals or copies of documents relevant to the criminal case?" *Id.* at 14:06-14:17. Carpenter's counsel responded, "I think that's correct, your honor." *Id.* at 14:18-14:20. Reflecting the apparent agreement of the parties on the fate of documents, Judge Calabresi summarized to Carpenter's counsel that,

---

[5] Audio of the argument can be found at http://www.ca2.uscourts.gov/decisions/isysquery/dcb3b9c0-d9fd-4948-a09a-555d3a5f1227/386/doc/16-1036.mp3 (Oral Arg.).

> Basically, each of you is saying that you are comfortable with the same thing. You are willing to let them keep anything that is relevant to the criminal case until the criminal case is over, and the government says that that's all they want … So unless you're going to argue and say that the government must go through these things now, rather than just wait, why isn't then the sensible thing to keep these things as they are until the criminal case is over?  And when the criminal case is over, give them back?

*Id.* at 15:50-16:37.

As to the United States' concern about chain-of-custody issues, Carpenter's counsel (who now belittles such concerns) stated, "if there are issues outside that they are representing about chain of custody, et cetera, it seems to me that those things could be worked out."  *Id.* at 18:13-18:20.  Hardly expressing that he was skeptical about or "unimpressed" with the chain-of-custody concerns, *see* Doc. No. 142 at 14, Judge Chin simply responded, "thank you."  Oral Arg. at 9:43.

Reflecting his discomfort about the multiplicity of proceedings related to the same evidence, Judge Ralph K. Winter asked, "how did this case wind up between three judges and is there any way to get them … heard by the judge who has the most need for these documents?"  Oral Arg. at 9:49-10:06.  Counsel for Carpenter appeared to state that Carpenter would not object to proceeding only before Judge Chatigny.  *Id*. at 15:40-15:51.

The Second Circuit therefore remanded the case to this Court "for further proceedings consistent with this order."  Doc. No. 121 at 4.  In explaining the reason for remand, the Second Circuit acknowledged the United States' chain-of-custody concerns in returning any documents, and recognized Plaintiffs' concession that they sought the return only "of documents not relevant to the criminal proceeding," stating,

> The Government noted that, subject to chain of custody concerns, it objects only to returning documents relevant to the criminal proceedings.  Plaintiffs' counsel acknowledged that they do not object to the retention of these documents as long as the criminal proceedings are pending, and that plaintiffs currently seek only the return of documents not relevant to the criminal proceedings.  As for chain of

custody concerns, the parties suggested at oral argument that they may be able to
reach an agreement to preserve the chain of custody.

*Id.* at 4.  Such language does not appear to reflect any "skepticism," as Plaintiffs imagine.  *See*
Doc. No. 142 at 14.

*Plaintiffs' Motion to Lift Stay*

Contrary to their repeated assurances to the Second Circuit that they only seek the return
of documents and copies "that aren't plausibly related to the Department of Labor prosecution
pending in the District of Connecticut right now," Oral Arg. at 13:09-13:19, and were open to
proceeding only before Judge Chatigny, *id.* at 15:40-15:51, Plaintiffs now seek to vastly expand
the Court's June 2015 order.  In this fifth bite at the apple, Plaintiffs urge this Court to order the
destruction of 26 boxes of documents and electronic evidence in the STOLI case that Judge
Chatigny has found to be reasonably held by the Government and that Plaintiffs may lack
standing to demand.  *See Carpenter,* 2015 WL 9461496, at *7.  Plaintiffs also appear to seek the
destruction of electronic copies of documents in IRS custody that Plaintiffs, themselves, have
squarely placed into dispute by suing Shaun Schrader for allegedly conducting or supervising an
overbroad search and seizure in 2010.  *See* Doc. No. 114 at ¶¶ 12 & 18.

Falsely stating that the Defendants in this case maintain "information that long ago was
deemed unresponsive," Doc. No. 142 at 8, Plaintiffs urge this Court to enforce and expand an
order that has been mooted by changed circumstances and extend the reach of Rule 41(g) beyond
all reason.  Unhappy with Judge Chatigny's denial of Rule 41(g) relief and with their
unsuccessful attempts to lift the stay of their Rule 41(g) proceeding before Judge Bolden,
Plaintiffs now ask this Court to intervene and issue an order that conflicts with the Court's
colleagues and hamstrings Shaun Schrader's defense against their meritless *Bivens* claims.

13

## ARGUMENT

**I.      Plaintiffs' Request is Inconsistent With Judge Chatigny's Order in the STOLI Case and Would Undermine the Validity of Carpenter's 57-Count Conviction.**

Where they once "acknowledged that they do not object to the retention of these documents as long as the criminal proceedings are pending," Doc. No. 121 at 4, Plaintiffs now ask the Court to "require the return of the twenty-nine (29) items of property that remain in dispute[,]" including 26 boxes of evidence in DOL custody.[6]  Doc. No. 142 at 1. To be clear, Plaintiffs now ask this Court to order the return of evidence in a criminal case pending before Judge Chatigny.  Their requested remedy lies with Judge Chatigny alone.

Plaintiffs plainly seek to use this civil litigation to derail the criminal proceedings against Carpenter and overcome a stay of civil proceedings pending before Judge Bolden.  An order to turn over and destroy physical and electronic evidence obtained or held by the Department of Labor in the STOLI case directly conflicts with Judge Chatigny's refusal to suppress and order return or destruction of the same documents and would usurp his supervision over the criminal case.  Indeed, Plaintiffs previously recognized the estoppel effects of Judge Chatigny's order, agreeing with the Second Circuit that they are "not entitled to the return of originals or copies of documents relevant to the criminal case."  Oral Arg. at 14:06-14:16.  Moreover, Plaintiffs previously recognized that the evidence related to the STOLI case (and seized by the Department of Labor) was separate from their claims in this action, seeking the return of documents seized by the Department of Labor in a separate Rule 41(g) motion within the *Bivens* case still pending before Judge Bolden.  *See Carpenter v. Allen*, No. 3:14-CV-741-VAB, Doc. No. 1.

---

[6] Defendants in this case have never "asserted unlimited power to seize and retain troves of private information for 'possible' future use[.]" Doc. No. 142 at 11.  As with Plaintiffs' *Bivens* claims, the record here "reveals a far different account" than Plaintiffs' rhetorical excesses.  Doc. No. 144 at 2.

In May 2011, the Department of Labor pursued the documents and electronic evidence now held in connection with the STOLI case – *none* of which are in the custody of the Commissioner of the IRS – through three methods: (1) search warrants in Connecticut to copy the images of the 11 computers or servers, one thumb drive, and one external hard drive obtained in April 2010 by the IRS; (2) a search warrant in Wisconsin for a small amount of material still being held by the IRS; and (3) a grand jury subpoena to Halloran and Sage for certain material contained in the boxes that had been returned to Halloran pursuant to the Rule 41(g) settlement. Thus, the overwhelming majority of items sought to be destroyed were obtained under subpoenas and search warrants issued in the STOLI case, not the IRS investigation that forms the basis of Plaintiffs' complaint in this case.  Judge Chatigny has refused to order the destruction of these 26 boxes of evidence.  Judge Bolden has stayed consideration of Plaintiffs' same request.

As has been recognized by this Court, the Second Circuit, and, indeed, Plaintiffs, Judge Chatigny should have sole jurisdiction over that property.  That is, the court with the criminal case is intended to have exclusive jurisdiction over the seized assets, including the determination of whether the assets were properly seized, until the case closes.  *See, e.g., De Almeida v. United States*, 459 F.3d 377, 382-83 (2d Cir. 2006) (Rule 41(g) relief "is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction."); *see also United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (a Rule 41(g) motion will be denied if the government's need for the property as evidence continues).

In his Ruling and Order denying Carpenter's motion to suppress and Rule 41(g) motion seeking return of all evidence seized in the IRS and DOL searches, Judge Chatigny found that Carpenter was not entitled to return of and destruction of the documents under Rule 41(g), and that the documents and mirror images were lawfully retained.  *See Carpenter*, 2015 WL 9461496, at *6-*7.  Carpenter raised before Judge Chatigny the same arguments he has presented

to this Court.  *See Carpenter*, 2015 WL 9461496, at \*1 & \*6-\*7; *see also United States v. Carpenter*, No. 3:13-cr-00226-RNC, Doc. No. 83 at 30-31 (citing *Ganias*, 755 F.3d at 138-39) (motion to suppress and for return of or destruction of all property seized in 2010 search).  Judge Chatigny held that (1) the Government had a legitimate interest in retaining the documents for review and possible use as evidence at trial; (2) Carpenter failed to establish that he had standing to demand the return of the majority of the documents; (3) he did not show that he needed the documents to prepare his defense or for some other legitimate purpose; and (4) the Government's retention of the documents pending further proceedings was reasonable.  *Id.* at \*7.  Aggrieved, the Plaintiffs seek a contrary ruling by this Court or Judge Bolden.

As the Second Circuit recognized in *De Almeida*, a court must decline to consider a Rule 41(g) motion in situations where a legal remedy is available elsewhere, the harm to the movant from proceeding in the other forum is limited, and continued jurisdiction risks duplicative proceedings and conflicting results.  *De Almeida,* 459 F.3d at 383.  The relief sought by Plaintiffs would be inconsistent with Judge Chatigny's order denying Carpenter's motion to suppress and motion for return of property, and would usurp Judge Chatigny's supervision over the STOLI case.  The documents were seized in the STOLI case and still may be needed for sentencing and an anticipated appeal by Carpenter.  The electronic evidence may be needed in native form in case an issue of chain of custody arises in the STOLI case (particularly given Plaintiffs' history of vexatious litigation).  There obviously is an adequate remedy at law – Carpenter sought Rule 41(g) relief in the STOLI case and will likely appeal Judge Chatigny's ruling and his eventual 57-count conviction.  *See De Almeida*, 459 F.3d at 382-83 (Rule 41(g) relief is available *only* when there is no adequate remedy at law).  The Government needed the property prior to Carpenter's conviction in the STOLI case and the end of the Wisconsin investigation, and it continues to need the subset of property it has maintained until Carpenter's conviction is final.

*See Chambers*, 192 F.3d at 377 (a Rule 41(g) motion will be denied if the government's need for the property as evidence continues).  To allow Plaintiffs to litigate these questions in this civil action would be entirely inconsistent with the jurisdiction of Judges Chatigny and Bolden in their respective cases, and, if successful, would imply the invalidity of Carpenter's 57-count conviction.  Therefore, the Court should deny Plaintiffs' Rule 41(g) motion.

## II.    Plaintiffs' Request is Inconsistent with the Settlement of Prior Rule 41(g) Motions, and the Documents Have Long Been in the Possession of Those Parties.

The relief sought by Plaintiffs in this case – particularly the destruction of the hard drive maintained in IRS custody – is inconsistent with the stipulated settlement in two prior Rule 41(g) motions brought by Plaintiff GMC and other entities associated with Carpenter.  Plaintiffs' request for return of property in this proceeding is duplicative of the two prior Rule 41(g) motions before Judge Covello, that representations made in those lawsuits contradict Plaintiffs' standing to bring the instant case, and that any order requiring the return and destruction of property is inconsistent both with the settlement of that litigation over six years ago and also with the unrebutted evidence that all original documents once held by the IRS are no longer in IRS custody (i.e., that the United States fully complied with the terms of that settlement).

As explained above, the United States and the plaintiffs in the Rule 41(g) cases before Judge Covello entered into a stipulated settlement by which IRS filter agents reviewed the evidence that had been seized, scanned the relevant documents onto a hard drive, and returned boxes that contained "potentially relevant" documents to representatives of BASI, while boxes with documents that were deemed not relevant were returned directly to 100 Grist Mill Road. Doc. No. 141-7 at ¶ 8; Doc. No. 141-1 at ¶¶ 7 & 8; Doc. No. 141-9 at ¶ 4.  To be clear, the movants in that case agreed that the United States should be able to scan the relevant documents onto a hard drive.

By June 16, 2011, the United States had returned 320 of the 322 boxes seized pursuant to the April 2010 search warrant to the parties asserting ownership of the property or to their counsel, including plaintiff GMC.  *See* Doc. No. 141-9 at ¶ 9.  The United States retained two original boxes under a subsequent agreement with Carpenter's Wisconsin counsel, but provided to counsel images of all documents retained.  *See* Doc. No. 40-1 at 2.  The movants in the prior Rule 41(g) matters, including Plaintiff GMC, did not notify the United States Attorney's Office for the Eastern District of Wisconsin that the Government failed to comply with the stipulated resolution, nor have they returned to Judge Covello and complained that the Government failed to abide by the parties' agreement or Judge Adelson's orders.  Doc. No. 141-7 at ¶ 9.  Indeed, Defendants have submitted unrebutted evidence that the IRS fully complied with that agreement. *See* Doc. Nos. 141-1, 141-2, & 141-3.  If a controversy did exist about the implementation of the settlement agreement – that is, if the parties to that agreement believe that the United States violated the stipulated settlement – the controversy should have been decided by Judge Covello in the first instance.  Judge Covello anticipated as much in his 2010 order disposing of those Rule 41(g) cases.  *See Pettibone Tavern*, No. 3:10-mc-0064-AVC, Doc. No. 44.

Moreover, the plaintiffs in the prior proceedings and Carpenter have made representations that BASI, and not Carpenter or GMC, was the owner and custodian of all or most property seized during the April 2010 warrant execution.  *See* Doc. No. 141-7 at ¶ 7; *Benistar Admin Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 4; Doc. No. 144 at 17 ("Carpenter contends that 40 of the boxes belonged to Grist Mill Capital.  The remaining boxes belong to either Benistar or Benistar Administrative Services, Inc.").  Indeed, Judge Chatigny held in the STOLI case that Rule 41(g) relief was not proper, in part, because Carpenter "has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records."  *Carpenter*, 2015 WL 9461496, at *7.  Plaintiffs may not seek

the return of documents owned by BASI.  *See, e.g., United States v. Salvucci*, 448 U.S. 83, 94-95 (1980).  Plaintiffs simply do not have standing to seek the return of property owned by third party entities that are merely "associated" with them, especially when those unspecified entities may have previously entered into a settlement agreement regarding the property's use.  A movant is not entitled under Rule 41(g) to the return of property to which he cannot claim lawful possession.  *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005) (citing *United States v. Van Cauwenberghe*, 827 F.3d 424, 433 (9th Cir. 1987)).

If Plaintiffs now assert that they (rather than the BASI plaintiffs) own the property, they bear the burden of proof on jurisdiction, and have not established their ownership or standing to seek return of the property.  *See id.* (quoting 3A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 673 (3d ed. 2004)) ("The movant is required to show that he is entitled to lawful possession of the property."); *see also*, *e.g., In re Wiltron Assocs., Ltd.*, 49 F.R.D. 170, 173 (S.D.N.Y. 1970) ("In the absence of Zohn's ability to establish ownership, and in view of the conflict as to the ownership of the certificates as between others, the certificates should not in any event be returned to Zohn [under Rule 41], at least until ownership is established.").

The Defendants submit that there remains no live case or controversy as to the documents requested by the complaint, rendering this Rule 41(g) motion moot.  The property sought in each of Plaintiffs' four complaints has already been returned.  None of the boxes made the subject of Plaintiffs' four complaints in this civil case are in the custody of the any defendant or, indeed, the United States.  The property seized by the IRS on April 20, 2010 was returned to Carpenter, his companies, or his counsel years ago.  Without a "live" controversy, the Court lacks jurisdiction over the matter.  *See Catanzano v. Wing,* 277 F.3d 99, 107 (2d Cir. 2001).

III.    **Rule 41(g) Does Not Place an Evidentiary Burden on the Government When Criminal Proceedings are Ongoing, and the IRS Still Needs to Maintain the Hard Drive.**

Plaintiffs have not established entitlement to equitable relief under Rule 41(g).  Rule 41(g) and its Committee Notes do not address the standard that governs whether property should be returned to a movant, and the Second Circuit has apparently not addressed the issue.  *See* Fed. R. Crim. P. 41(g); *see also United States v. Gotti*, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003).  In the absence of such guidance, courts have held that "although the burden of proof is on the movant while a criminal proceeding is pending, the burden shifts to the government 1) after trial, 2) after a guilty plea or 3) after the abandonment of the government's investigation."  *Id.* (quoting *Chambers*, 192 F.3d at 377 & *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987)).

The adoption of burden shifting in a Rule 41(g) proceeding is motivated by a commonsense proposition: when the Government no longer has use for evidence, it should be required to establish the reasonableness of maintaining possession of that evidence.  *See Chambers*, 192 F.3d at 377 (burden shifts to government to demonstrate legitimate reason to retain property when the criminal proceedings have terminated); *see also Martinson*, 809 F.2d at 1369 (burden shifts to government to demonstrate legitimate reason to retain property when property is no longer needed for evidentiary purposes, either because trial is complete, defendant has pleaded guilty, or government abandoned investigation).  But, as the Plaintiffs previously conceded, criminal proceedings remain pending against Carpenter.  *See* Doc. No. 121 at 4. Sentencing has not taken place, and it appears a near certainty that Carpenter will appeal his 57-count conviction (particularly since he recently has added three experienced attorneys to his defense team, *see United States v. Carpenter*, No. 3:13-CR-226-RNC, Doc. Nos. 335, 336, &

339).  So Plaintiffs themselves must establish that they are entitled to the extraordinary relief sought by this motion.  Having tendered no evidence, they have not done so.

The only property sought by Plaintiffs' Motion to Lift Stay that is not directly relevant to the criminal case pending before Judge Chatigny is a hard drive of imaged documents that were relevant to the IRS investigation, obtained through a valid search warrant approved by United States Magistrate Judge Thomas P. Smith, and scanned onto a hard drive under a settlement agreement and in accordance with filter orders issued by an Eastern District of Wisconsin judge. Initially, Plaintiffs sought the suppression and return of this evidence in the STOLI case, suggesting that they once took the position that it was directly relevant to that still-pending case.

Regardless, Plaintiffs continue to place the contents of the hard drive into dispute in this civil case.  That is, Plaintiffs have maintained a *Bivens* action against Shaun Schrader in which they allege, among other grievances, that Schrader seized or oversaw the seizure of documents "beyond the scope of what was permitted by the warrant," and that unlawfully included attorney-client communications.  Doc. No. 114 at ¶¶ 12 & 18.  In sum, Plaintiffs claim that Schrader should be held personally responsible for an unconstitutionally overbroad seizure of documents, but ask the Court to order the destruction of any evidence of the documents that the IRS seized. Having placed in controversy in this litigation the content of the documents that the IRS seized in 2010, Plaintiffs cannot be heard to complain that the IRS wishes to maintain evidence of exactly what was seized in order that Schrader may defend himself in this lawsuit.

IV.    **The Relief Sought by Plaintiffs Relies Upon an Unwarranted Expansion of Rule 41(g).**

Finally, with regard to the only evidence still held by the IRS, Plaintiffs seek an extraordinary remedy that is not appropriate under Rule 41(g) or any case law.  Although their complaint only seeks "an order requiring that the material seized be returned to its rightful owner(s)," Doc. No. 114 at 9, Plaintiffs now ask the Court to order the destruction of all

electronic copies of corporate documents (most of which belonged to third parties) that were

long ago returned.  But Rule 41(g) does not go nearly as far.  It states:

> (g) Motion to Return Property. A person aggrieved by an unlawful search and
> seizure of property or by the deprivation of property may move for the property's
> return.  The motion must be filed in the district where the property was seized.
> The court must receive evidence on any factual issue necessary to decide the
> motion.  If it grants the motion, the court must return the property to the movant,
> but may impose reasonable conditions to protect access to the property and its use
> in later proceedings.

FED. R. CRIM. P. 41(g).  By its own terms, the Rule does not discuss the destruction of evidence,

and indeed expressly authorizes a court to "impose reasonable conditions" on returned property,

precisely "to protect access to the property and its use in later proceedings."

Plaintiffs have not established that there was any "unlawful search and seizure of

property."  And they no longer complain of "the deprivation of property."  The property (other

than the 26 boxes of evidence in the STOLI case) has been returned.  Plaintiffs instead imagine

an equitable cause of action (apparently against any officer of the United States) for an

individual to obtain the destruction of all copies of evidence seized during a valid search warrant

execution.  Plaintiffs press this theory even in the absence of any proof that they have standing

with regard to the vast majority of documents, which are corporate records owned by a third

party.

Plaintiffs mostly rely on a truncated portion of the Advisory Committee's Notes to the

former Rule 41(e), and ignore Committee Notes that undermine their argument.  But the full

context of the quote cited by Plaintiffs makes clear that the destruction of copies of validly-

seized evidence is not appropriate here.  The Note states:

> Rule 41(e) is not intended to deny the United States the use of evidence permitted
> by the fourth amendment and federal statutes, even if the evidence might have
> been unlawfully seized.  *See, e.g., United States v. Calandra*, 414 U.S. 338, 349
> n.6 (1978) ("Rule 41(e) does not constitute a statutory expansion of the
> exclusionary rule."); *United States v. Roberts*, 852 F.2d 671 (2nd Cir.1988)
> (exceptions to exclusionary rule applicable to Rule 41(e)).  Thus, the exclusionary

provision is deleted, and the scope of the exclusionary rule is reserved for judicial decisions.

In opting for a reasonableness approach and in deleting the exclusionary language, the Committee rejects the analysis of *Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983), which held that the United States must return photocopies of lawfully seized business records unless it could demonstrate that the records were "necessary for a specific investigation."  As long as the government has a law enforcement purpose in copying records, there is no reason why it should be saddled with a heavy burden of justifying the copying.  Although some cases have held that the government must return copies of records where the originals were illegally seized – *See, e.g., United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 801 (1948); *Goodman v. United States*, 369 F.2d 166 (9th Cir. 1966) – these holdings are questionable in situations in which the government is permitted under Supreme Court decisions to use illegally seized evidence, and their reasoning does not apply to legally seized evidence.

As amended, Rule 41(e) avoids an all or nothing approach whereby the government must either return records and make no copies or keep originals notwithstanding the hardship to their owner.  The amended rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders. In many instances documents and records that are relevant to ongoing or contemplated investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use.  In some circumstances, however, equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.  *See, e.g., Paton v. LaPrade*, 524 F.2d 862, 867-69 (3rd Cir. 1975).  The amended rule contemplates judicial action that will respect both possessory and law enforcement interests.

FED. R. CRIM. P. 41 advisory committee's note (1989 amendments).  If anything, the Committee Note compels that the Government should not be "saddled with a heavy burden of justifying" its retention of copies of lawfully-seized evidence; it does not require that those items be subject to court-ordered destruction.

Moreover, the case law relied upon by Plaintiffs does not remotely suggest that Rule 41(g) relief is appropriate here.  Plaintiffs identify no cases in which a district court has ordered the destruction of copies of validly-seized evidence under Rule 41(g).  Indeed, Plaintiffs point to no authority that Rule 41(g) even provides a freestanding cause of action for them to obtain the destruction of copies of properly-seized evidence simply due to the passage of time (particularly

where, as here, a legal remedy is available in a pending criminal case).  The Ninth Circuit's

holding in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010),

considered a motion seeking the return of private and "illegally seized data" – reports of Major

League Baseball drug test results – that was obtained "in callous disregard of the Fourth

Amendment, reach[ing] information clearly not covered by a warrant."  *Id.* at 1172.  The district

court there ordered the return of the data, including copies, because maintaining the information

within that improperly-seized evidence risked continuing harm to the Major League Baseball

players.  *Id.* at 1173-74.

   *Ganias* also provides scant justification for Plaintiffs' extraordinary request.  *Ganias* did

not consider a Rule 41 motion for return of property, either in the civil or criminal context.  *See*

*Ganias*, 755 F.3d at 139.  Instead, the defendant in *Ganias* brought a post-indictment motion to

suppress evidence in his criminal case.  *Id.* at 130.  There, the U.S. Army Criminal Investigation

Division executed a search warrant in November 2003 at the offices of an accountant (Stavros

Ganias) to obtain records of two of Ganias's corporate clients.  *Id.* at 138.  At that time

"[n]othing in the record suggests that Ganias himself was suspected of any crimes."  *Id.* at 201.

The agents made forensic images of the Ganias's computers to review the corporate client files

offsite.  *Id.*  By December 2004, the government allegedly had searched the computers and

segregated the responsive documents, but did not purge the non-responsive personal financial

records of Ganias from the mirrored drives.  *Id.*

   Later, the IRS became involved and officially expanded the investigation to include

Ganias.  *Id.* at 206-07.  Ganias, accompanied by counsel, met in a proffer session with an IRS-CI

agent and others, and the IRS-CI agent sought consent to access Ganias's "personal QuickBooks

files" that had been mirrored during the Army CID search three years earlier.  *Ganias*, 824 F.3d

at 207.  According to Ganias, those personal files were non-responsive to the 2003 search

warrant, but had been maintained by the investigators.  *Id.* at 200.  Ganias "failed to respond (either by consenting, objecting, or filing a motion under Federal Rule of Criminal Procedure 41(g) for return of seized property)[.]"  *Id.* at 207.  Accordingly, in April 2006, the IRS sought and obtained a search warrant to search the retained mirrored images for Ganias's personal financial records.  *Id.*  The district court denied Ganias's motion to suppress the evidence obtained from that 2006 search following a full evidentiary hearing.  *See United States v. Ganias*, No. 3:08-CV-224-AWT, 2011 WL 2532396 (D. Conn. June 24, 2011).  Ganias was later convicted of tax evasion.  *See Ganias*, 755 F.3d at 127.

The *en banc* Second Circuit affirmed the district court's order denying Stavros Ganias's motion to suppress and his conviction, concluding that the IRS agents had acted in good faith reliance on the 2006 search warrant.  *Ganias*, 824 F.3d at 221-25 (citing *United States v. Leon*, 468 U.S. 897 (1984)).  Although the Second Circuit engaged in a thorough discussion of the Fourth Amendment issues that formed the basis of the panel opinion, the *en banc* majority concluded that it "need not resolve the ultimate question [of] whether the Government's retention of forensic copies of Ganias's hard drives during the pendency of its investigation violated the Fourth Amendment."  *Id.* at 220-21.  Because the agents acted reasonably in relying upon the 2006 warrant to search for evidence of Ganias's tax evasion, suppression was not appropriate.  *Id.* at 225.  The *en banc* court declined to find that the Government's continued possession of non-responsive evidence violated the Fourth Amendment, and certainly did not endorse the remedy – destruction of relevant evidence – sought here by Plaintiffs.  The *Ganias* majority noted only in passing that Ganias had the opportunity to request the return of his personal files – through Rule 41(g) or otherwise – which suggested that there was not a Fourth Amendment violation even in the absence of the *Leon* good faith exception.  *Id.* at 211-12 & 218-20.

*Ganias* simply does not stand for the proposition that an individual has standing under Rule 41(g) to seek the return and destruction of copies of corporate documents that were responsive to, and validly seized under, a search warrant.  Indeed, the Advisory Committee Note to Rule 41(g) specifically states that "[a]s long as the government has a law enforcement purpose in copying records, there is no reason why it should be saddled with a heavy burden of justifying the copying."  FED. R. CRIM. P. 41, advisory committee's note (1989 amendments).

None of the cases cited by Plaintiffs are remotely on point, or compel a contrary result. *See United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976) (granting motion for return of money seized from criminal defendant's apartment where the money was not alleged to be stolen or contraband and was not needed as evidence); *United States v. Galpin*, 720 F.3d 436, 446-47 (2d Cir. 2013) (discussing the particularity requirement in a search warrant for the contents of a computer hard drive); *In the Matter of a Warrant*, 33 F. Supp. 3d at 398 (declining "to impose a deadline on the Government's retention of the materials, believing that the remedies available to curb any improper retention – including suppression, a civil damages action, and a motion under Rule 41(g) as described above – are appropriate and adequate."); *United States v. Wey*, 256 F. Supp. 3d 355, 377 (S.D.N.Y. 2017) (granting motion to suppress where search warrant lacked a time limit for reviewing electronically stored information for responsiveness).

Rule 41(g), by its very terms, balances a movant's interest in the *return* of property and the Government's access to and use of the property in later proceedings.  *See* FED. R. CRIM. P. 41(g); *see also Ganias*, 824 F.3d at 219 (discussing the possibility of an order that mirror images be returned to Ganias with reasonable conditions to protect access to the property for its use in later proceedings).  Rule 41(g) does not contemplate the destruction of evidence, but instead

speaks of the return of property with appropriate safeguards for its preservation for use at trial. *See* FED. R. CRIM. P. 41(g).[7]  There is no basis to expand it further.

**Conclusion**

By defending against Plaintiffs' serial and misleading Rule 41(g) motions, the Defendants in this case do not seek to "resist judicial oversight," as is the remarkable allegation of Plaintiffs.  *See* Doc. No. 13.  In actual fact, requests for return of the same documents from various named and unnamed defendants have been overseen by fully one-third of the active judges in the District of Connecticut, notwithstanding that the United States long ago returned the documents sought by Plaintiffs.  One judge (Judge Covello) approved a 2011 settlement disposing of the matter; another judge (Judge Chatigny) denied Plaintiffs' motion entirely in 2015; another judge (Judge Bolden) stayed his case in 2015 pending conclusion of the criminal proceedings.  Now – seeking the destruction of evidence they told the Second Circuit was not at issue – Plaintiffs press an unreasonable expansion of Rule 41(g) to obtain evidence which already has returned or is needed for pending criminal and civil matters.

The unrebutted evidence provided by Defendants in response to Plaintiffs' Rule 41(g) motion has established that – notwithstanding Plaintiffs' false allegations throughout this civil case – the original documents seized on April 20, 2010 were returned by June 11, 2011.  The only items still maintained by *any* Government entity are (1) paper and ESI evidence seized by the Department of Labor and relevant to Carpenter's pending criminal case; and (2) electronic

---

[7]  Indeed, this is precisely what the settlement before Judge Covello did – it permitted the Government to retain scanned copies of relevant materials, returned irrelevant documents to the targets directly, and then permitted the targets' attorneys to retain the originals of the relevant materials.  In that way, the targets had effective possession of the material, while relevant documents were preserved for subsequent litigation.

27

copies of documents seized by the IRS that are directly relevant to Carpenter's *Bivens* claims against Shaun Schrader.  Parsing their wildly shifting demands in this, their fifth Rule 41(g) proceeding, it becomes clear that Plaintiffs wish to obtain from this Court an order that contradicts the denial of Rule 41(g) relief by Judge Chatigny and that supersedes the stay imposed by Judge Bolden in the civil litigation related to the Department of Labor search.  No case law or statute supports that result.

Defendants therefore ask the Court to deny Plaintiffs' request to enforce its June 4, 2015 order, deny Plaintiffs' Rule 41(g) motion, and dismiss this case.

Respectfully Submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General


*/s/ Jordan A. Konig*
JORDAN A. KONIG (phv07255)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Tel: (202) 305-7917; Fax: (202) 514-5238
Email: Jordan.A.Konig@usdoj.gov


## CERTIFICATE OF SERVICE

I certify that on April 5, 2018, I filed the *Opposition to Plaintiffs' Motion to Lift Stay* with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all parties registered to receive such notice.

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Trial Attorney, Tax Division
U.S. Department of Justice